Gregory GOTTSACKER and New Jersey LLC,
Plaintiffs-Respondents,

v.

Julie A. MONNIER, Paul Gottsacker
and 2005 New Jersey LLC,
Defendants-Appellants-Petitioners.

Supreme Court

*No. 2003AP457. Oral argument January 14, 2005.
—Decided June 8, 2005.*

2005 WI 69

(Also reported in 697 N.W.2d 436.)

362

For the defendants-appellants-petitioners there were briefs by *Paul R. Erickson, Brian W. Guilbeault and Gutglass, Erickson, Bonville, Seibel & Falkner, S.C.,* Milwaukee, and oral argument by *Paul R. Erickson.*

For the plaintiffs-respondents there was a brief by *James O. Conway, Robert W. Horsch* and *Olsen, Kloet, Gunderson & Conway,* Sheboygan, and oral argument by *James O. Conway.*

¶ 1. ANN WALSH BRADLEY, J. The petitioners, Julie Monnier, Paul Gottsacker, and their limited liability company, 2005 New Jersey LLC, seek review of a published decision of the court of appeals affirming a

circuit court judgment, which determined that they were precluded from transferring real estate owned by New Jersey LLC to 2005 New Jersey LLC.[1] The petitioners assert that they were not precluded from voting to make the transfer of property under Wis. Stat. §§ 183.0402 and 183.0404 (2001–02), the limited liability company statutes governing duties of managers/members and voting.[2]

¶ 2. We conclude that the petitioners possessed the majority necessary to authorize the transfer in question. Furthermore, we determine that the petitioners' material conflict of interest did not prohibit them from voting to make the transfer so long as they dealt fairly. However, because there was no express determination by the circuit court as to whether the petitioners willfully failed to deal fairly with New Jersey LLC or its other member, we reverse the decision of the court of appeals and remand the cause for further proceedings.

I

¶ 3. On September 4, 1998, Julie Monnier (hereinafter Monnier) formed New Jersey LLC as a vehicle to own investment real estate. Ten days later, the company acquired a 40,000– square-foot warehouse located at 2005 New Jersey Avenue in Sheboygan, Wisconsin. The warehouse had a single tenant on a year-to-year lease. New Jersey LLC purchased the property for $510,000, with the financing arranged for and guaranteed by Monnier.

---

[1] *Gottsacker v. Monnier,* 2004 WI App 25, 269 Wis. 2d 667, 676 N.W.2d 533 (affirming a decision of the circuit court for Sheboygan County, Gary Langhoff, Judge).

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

¶ 4. Brothers Paul Gottsacker (hereinafter Paul) and Gregory Gottsacker (hereinafter Gregory) became members of New Jersey LLC in January 1999. They entered into a Member's Agreement, which expressed their intent to operate under Wisconsin's limited liability company laws. That document stated in relevant part:

> (4) Julie A. Monnier shall own a 50% interest in the capital, profits and losses of Company and shall have 50% of the voting rights of Company.

> (5) Paul Gottsacker and Gregory Gottsacker, collectively, shall own a 50% interest in the capital, profits and losses of Company and shall have 50% of the voting rights of Company.

¶ 5. New Jersey LLC later purchased additional property in Sheboygan on Wilson Avenue. When it was sold, the proceeds were distributed to the members as follows: 50% to Julie, 25% to Paul, and 25% to Gregory. After the sale of the Wilson Avenue property, the only remaining asset of New Jersey LLC was the warehouse on New Jersey Avenue.

¶ 6. Relationships among the members of New Jersey LLC subsequently became strained. In May 2000, Paul and Gregory had a falling-out, allegedly due to Gregory's lack of contribution to the enterprise. Thereafter, communication between the brothers was virtually nonexistent. Monnier also testified that she had not spoken with Gregory since 1998.

¶ 7. On June 7, 2001, Monnier executed a warranty deed transferring the warehouse property owned by New Jersey LLC to a new limited liability company called 2005 New Jersey LLC for $510,000, the same amount as the original purchase price. The new limited liability company consisted of two members: Monnier

367

with a 60% ownership interest and Paul with a 40% ownership interest. Neither one had discussed the transfer with Gregory before it occurred.

¶ 8. Following the transfer, Monnier sent a check to Gregory for $22,000, which purportedly represented his 25% interest in the warehouse property previously owned by New Jersey LLC. Gregory did not cash the check. Monnier and Paul, meanwhile, did not receive any cash payment but instead left their equity in the recently created 2005 New Jersey LLC.

¶ 9. Gregory commenced suit against Monnier, Paul, and 2005 New Jersey LLC, alleging that they had engaged in an illegal transaction under Wis. Stat. Ch. 183. After a bench trial, the circuit court agreed, noting that the sole purpose of the transfer of the warehouse property was to eliminate Gregory's ownership interest in the asset.

¶ 10. Because the transfer served no legitimate business purpose, and because Monnier and Paul both profited from it, the circuit court determined that Monnier and Paul were precluded by the conflict of interest rules under Wis. Stat. Ch. 183 from voting to authorize the transfer. In the alternative, it concluded that Paul did not have authority to act without the assent of Gregory because the two brothers held a "collective" interest in the ownership. Ultimately, the circuit court ordered that 2005 New Jersey LLC return the warehouse property to New Jersey LLC. Monnier, Paul, and 2005 New Jersey LLC appealed.

¶ 11. The court of appeals affirmed the decision of the circuit court on different grounds. Contrary to the circuit court, the court of appeals reasoned that the provisions of Wis. Stat. Ch. 183, specifically Wis. Stat. §§ 183.0402 and 183.0404, do not prevent a member who has a material conflict of interest from dealing

with matters of the LLC. *Gottsacker v. Monnier,* 2004 WI App 25, ¶ 19, 269 Wis. 2d 667, 676 N.W.2d 533. Rather, those statutes prohibit a member who has a material conflict of interest from dealing unfairly with the LLC or its members. *Id.* Thus, a member with a material conflict of interest can vote to transfer property but is required to do so fairly. *Id.*

¶ 12. Applying this standard to the present case, the court of appeals held that the transfer of property was unfair in two respects. First, the conveyance was not an "arm's length transaction" because it did not occur on the open market. *Id.,* ¶ 21.[3] Second, the sale made it impracticable for New Jersey LLC to carry on with its intended business (i.e., to hold the commercial property as a long-term investment). *Id.,* ¶ 22. Accordingly, the court of appeals did not reach the issue of whether Paul and Gregory each held a 25% ownership interest or whether the term "collectively" in the Member's Agreement required both brothers to jointly vote the entire 50%. *Id.,* ¶ 24.

## II

██

¶ 13. This case provides us with our first opportunity to examine limited liability companies in Wisconsin. The issues presented involve matters of contractual and statutory interpretation. We will initially examine the Member Agreement to determine whether the pe-

---

[3] This court has previously defined an "arm's length transaction" as "a sale in the open market between an owner willing but not obliged to sell and a buyer willing but not obliged to buy." *Flood v. Lomira Bd. of Review,* 153 Wis. 2d 428, 436, 451 N.W.2d 422 (1990) (citing *Darcel, Inc. v. Manitowoc Review Bd.,* 137 Wis. 2d 623, 628, 405 N.W.2d 344 (1987)).

titioners possessed the majority necessary to authorize the transfer in question. Next we will construe statutory provisions in Wis. Stat. Ch. 183 to determine whether the petitioners were nonetheless prohibited from voting to transfer the property because of a material conflict of interest. Both inquiries are questions of law subject to independent appellate review. *DeWitt Ross & Stevens v. Galaxy Gaming & Racing,* 2004 WI 92, ¶¶ 19, 20, 273 Wis. 2d 577, 682 N.W.2d 839 (citing *N. States Power Co. v. Nat'l Gas Co.,* 2000 WI App 30, ¶ 7, 232 Wis. 2d 541, 606 N.W.2d 613; *Meyer v. Sch. Dist. of Colby,* 226 Wis. 2d 704, 708, 595 N.W.2d 339 (1999)).

## III

¶ 14. We begin our discussion with a brief overview and history of limited liability companies. A limited liability company (LLC) has been described as "an unincorporated association of investors, called members in LLC parlance, whose personal liability for obligations of the venture are limited to the amount invested." Joseph W. Boucher et al., *LLCs and LLPs: A Wisconsin Handbook* § 1.4 (rev. ed. 1999).[4] It is a distinct business entity that adopts and combines features of both partnership and corporate forms. *Id.*

¶ 15. From the partnership form, the LLC borrows characteristics of informality of organization and operation, internal governance by contract, direct par-

---

[4] We find this handbook instructive as its authors helped draft the Wisconsin Limited Liability Company Law (WLLCL), Wis. Stat. Ch. 183, and were active in the legislative process.

ticipation by members in the company, and no taxation at the entity level. *Id.* From the corporate form, the LLC borrows the characteristic of protection of members from investor-level liability. *Id.* Flexible in nature, the LLC allows direct involvement and control by its members yet also permits a corporate representative form of governance if the entity elects to be governed by managers. *Id.*

¶ 16. The first LLC statute was enacted by Wyoming in 1977 as special interest legislation for an oil and gas exploration company. William Callison & Maureen A. Sullivan, *Limited Liability Companies: A State-by-State Guide to Law and Practice* § 1.5 (2004). Florida adopted a similar provision five years later. *Id.* Initially, there was relatively little interest in these acts because of the uncertainty surrounding the LLC's ability to be taxed as a partnership. Susan Pace Hamill, *The Origins Behind The Limited Liability Company,* 59 Ohio St. L.J. 1459, 1469 (1998). However, that would eventually change.

¶ 17. In 1988, the IRS issued Revenue Ruling 88–76, allowing the Wyoming LLC to secure partnership classification for income tax purposes, despite the presence of limited liability. *Id.* at 1469–70. After this landmark decision, states began passing legislation allowing for the formation of LLCs. *Id.* at 1470. By the end of 1996, every U.S. jurisdiction had enacted its own LLC statute. *Id.* at 1477. This development has prompted some commentators to hail the LLC as "[t]he legal phenomenon of the 1990s, at least for business practitioners." Boucher et al, *LLCs and LLPs,* at § 1.1. *See also* Larry E. Ribstein, *LLCs: Is The Future Here?,* 13 Business Law Today 11 (November/December 2003).

¶ 18. Wisconsin enacted its own LLC law in 1993 with the passage of the Wisconsin Limited Liability

Company Law (WLLCL), Wis. Stat. Ch. 183. The WLLCL was drafted by members of the State Bar Business Committee with assistance from the Legislative Reference Bureau and the Office of the Secretary of State. *See* Drafting Records of 1993 A.B. 820. Although the business entity it created was new and distinct, the WLLCL borrowed concepts from a number of sources, including the Wisconsin Uniform Limited Partnership Act, Wis. Stat. Ch. 179, the Wisconsin Business Corporation Law, Wis. Stat. Ch. 180, and the 1992 Prototype Limited Liability Company Act, drafted by the Subcommittee on Limited Liability Companies of the Committee on Partnerships and Unincorporated Business Organizations of the ABA Section of Business Law. *Id.*[5]

¶ 19. The overriding goal of the WLLCL was "to create a business entity providing limited liability, flow-through taxation, and simplicity." Boucher et al., *LLCs and LLPs,* at Preface.[6] The drafters believed it critical

---

[5] Although drafts of the Uniform Limited Liability Company Act were circulating at the time, the drafters of the WLLCL found the Prototype Act more helpful. Joseph W. Boucher et al., *LLCs and LLPs: A Wisconsin Handbook* § 1.10 (rev. ed. 1999). The official Uniform Limited Liability Company Act was approved by the National Conference of Commissioners on Uniform State Laws in 1995, after the passage of the WLLCL.

To date, only nine jurisdictions in the United States have substantially adopted the Uniform Act: Alabama, Hawaii, Illinois, Montana, South Carolina, South Dakota, Vermont, the Virgin Islands, and West Virginia. *See* Uniform Limited Liability Company Act Annotated. For a discussion of the Uniform Act, see Larry E. Ribstein, *A Critique of the Uniform Limited Liability Company Act,* 25 Stetson L. Rev. 311 (Winter 1995).

[6] This is also evident from the WLLCL's legislative history. The first paragraph in the Analysis by the Legislative Reference Bureau provides:

that a Wisconsin LLC readily be treated as a partnership for tax purposes. *Id.* at § 1.11. Additionally, they emphasized the importance of flexibility and freedom of contract, which is reflected throughout the provisions of the WLLCL. Finally, they hoped that the LLC would provide an inexpensive vehicle that did not require legal counsel at every step. *Id.* With this background in mind, we turn now to the facts of this case.

## IV

¶ 20. The first issue we address is whether the petitioners possessed the majority necessary to authorize the transfer in question. Gregory submits that they did not. He notes that under the Member's Agreement for New Jersey LLC, Monnier had 50% of the voting rights, while he and his brother "collectively" had the other 50%. Thus, Gregory asserts, Monnier needed the approval of both brothers in order to transfer the commercial real estate.[7]

¶ 21. The petitioners, meanwhile, maintain that Paul and Gregory each possessed 25% of the voting rights. They argue that there is nothing in the

This bill authorizes the organization and operation of limited liability companies in this state. A limited liability company (LLC) is a business entity that possesses both corporate characteristics and characteristics associated with a partnership. The most significant of these features is the concept of limited liability for LLC owners, or members, a corporation attribute, and the potential treatment of an LLC as a partnership for state and federal income tax purposes.

*See* Drafting Records of 1993 Wis. Act 112.

[7] Both parties agree that an affirmative vote of more than 50% was required to decide any matter connected with the business of New Jersey LLC.

373

Member's Agreement to indicate that the brothers could not vote independently. Furthermore, they contend that the term "collectively" simply refers to the sum of the brothers' individual interests, which are 25% each. According to the petitioners, such an understanding is consistent with the practice and past experience of the company.

¶ 22. Resolution of this dispute involves interpretation of a contract. When the terms of a contract are plain and unambiguous, we will construe it as it stands. *Borchardt v. Wilk,* 156 Wis. 2d 420, 427, 456 N.W.2d 653 (Ct. App. 1990) (citing *Ford Motor Co. v. Lyons,* 137 Wis. 2d 397, 460, 405 N.W.2d 354 (Ct. App. 1987)). However, a contract is ambiguous when its terms are reasonably susceptible to more than one construction. *Id.* (citing *Just v. Land Reclamation, Ltd.,* 151 Wis. 2d 593, 600, 445 N.W.2d 683 (Ct. App. 1989)).

¶ 23. We conclude that the Member's Agreement here is ambiguous as to the voting rights of Paul and Gregory. To begin, the term "collectively" is not defined in the document. Moreover, the dictionary definition relied upon by the circuit court in its decision is reasonably susceptible of more than one construction.[8] That definition provided: "formed by collecting; gathered into a whole . . . designating or any enterprise in which people work together as a group, especially under a system of collectivism . . . ." Although the definition supports an interpretation that the brothers, together, have a 50% voting interest, it fails to conclusively answer whether they have to act in concert.

---

[8] The circuit court relied upon *Webster's New World Dictionary,* Second College Edition.

¶ 24. When interpreting an ambiguous contract provision, we must reject a construction that renders an unfair or unreasonable result. *Id.* at 428 (citing *Wausau Joint Venture v. Redevelopment Auth.,* 118 Wis. 2d 50, 58, 347 N.W.2d 604, 608 (Ct. App. 1984)). Likewise, we should adopt a construction that will render the contract a rational business instrument so far as reasonably practicable. *Id.* at 427–28 (citing *Bruns v. Rennebohm Drug Stores, Inc.,* 151 Wis. 2d 88, 94, 442 N.W.2d 591 (Ct. App. 1989)).

¶ 25. Applying these principles to the case at hand, we are satisfied that the term "collectively" refers to the sum of the brothers' individual 25% interests. To conclude otherwise would require unanimous approval by the members in order to perform any act that concerns the business of the company. Here, there is no express language indicating that the parties intended such a result. Construing the Member's Agreement to allow one minority member to effectively deadlock the LLC is unreasonable absent express language.

V

¶ 26. Having determined that the petitioners possessed the majority necessary to authorize the transaction, we consider next whether they were nonetheless prohibited from voting to transfer the property because of a material conflict of interest. Here, the circuit court found that "[t]he conveyance of the property by Julie Monnier and Paul Gottsacker to themselves in the guise of a newly created LLC, unquestionably, represents a material conflict of interest." This finding is supported by the facts of the case. Not only did Monnier and Paul

375

engage in self-dealing, but in doing so they also increased their individual interests in the new LLC which received the property. Monnier's ownership improved from 50% to 60%, while Paul's interest improved from 25% to 40%.

¶ 27. The question therefore becomes what, if any, impact did this conflict of interest have on Monnier and Paul's ability to vote to transfer the property. Wisconsin Stat. § 183.0404 governs voting in LLCs and contemplates situations that would prevent a member from exercising that voting power. Subsection (3) of the statute explicitly states that members can be "precluded from voting." However, that subsection does not address how or when that preclusion would occur. Wisconsin Stat. § 183.0404 provides in relevant part:

> (1) Unless otherwise provided in an operating agreement or this chapter . . . an affirmative vote, approval or consent as follows shall be required to decide any matter connected with the business of a limited liability company:

> (a) If management of a limited liability company is reserved to the members, an affirmative vote, approval or consent by members whose interests in the limited liability company *represent contributions to the limited liability company of more than 50% of the value* . . . .

> . . . .

> (3) Unless otherwise provided in an operating agreement, *if any member is precluded from voting with respect to a given matter,* then the value of the contribution represented by the interest in the limited liability company with respect to which the member would otherwise have been entitled to vote shall be excluded from the total contributions made to the limited liability company for purposes of determining the 50% threshold under sub. (1)(a) for that matter.

(Emphasis added.)

¶ 28. Because Wis. Stat. § 183.0404 does not address how or when a member is precluded from voting, Gregory asks that we look to Wis. Stat. § 183.1101 for guidance. Wisconsin Stat. § 183.1101 pertains to the authority to sue on behalf of an LLC. It states that, "the vote of any member who has an interest in the outcome of the action that is adverse to the interest of the limited liability company shall be excluded." Wis. Stat. § 183.1101(1). According to Gregory, if one wishes to harmonize this section with Wis. Stat. § 183.0404, then it must follow that a member who has an interest adverse to the interest of the LLC is precluded from voting.

¶ 29. The petitioners, however, contend that members are not precluded from voting on a matter affecting the LLC, even if they have a material conflict of interest. For support, the petitioners rely upon Wis. Stat. § 183.0402, the statute defining duties of managers and members.[9] That statute anticipates members having a material conflict of interest and requires them to "deal fairly" with the LLC and its other members. Wisconsin Stat. § 183.0402(1)(a) provides:

> Duties of managers and members. Unless otherwise provided in an operating agreement:
>
> (1) No member or manager shall act or fail to act in a manner that constitutes any of the following:
>
> (a) A willful failure to deal fairly with the limited liability company or its members in connection with a matter in which the member or manager has a material conflict of interest.[10]

---

[9] We emphasize that these statutory duties may be modified, limited, or expanded by the Member's Agreement. *See* Wis. Stat. § 183.0402. Parties may wish to impose greater protections to obviate future problems.

[10] This language closely follows Wis. Stat. § 180.0828(1)(a), the statute governing limited liability of directors of corpora-

377

¶ 30. We have previously recognized that statutes relating to the same subject matter should be read together and harmonized when possible. *State v. Cole,* 2003 WI 59, 262 Wis. 2d 167, ¶ 13, 663 N.W.2d 700 (citing *State v. Leitner,* 2002 WI 77, ¶ 30, 253 Wis. 2d 449, 646 N.W.2d 341). Like the court of appeals, we discern a stronger relationship between Wis. Stat. §§ 183.0404 and 183.0402 than §§ 183.0404 and 183.1101. *Gottsacker,* 269 Wis. 2d 667, ¶ 18. Here, Wis. Stat. §§ 183.0404 and 183.0402 appear in the same subchapter entitled "Rights and Duties of Members and Managers." The position of a statutory subsection is significant when construing the statute. *State v. Fouse,* 120 Wis. 2d 471, 477, 355 N.W.2d 366 (Ct. App. 1984) (citing *State v. Consolidated Freightways Corp.,* 72 Wis. 2d 727, 737, 242 N.W.2d 192 (1976)).

¶ 31. Reading Wis. Stat. §§ 183.0404 and 183.0402 together in harmony, we determine that the WLLCL does not preclude members with a material

---

tions. That statute is found in Chapter 180, also known as the "Wisconsin business corporation law," which was one of the three primary sources used as a model for the WLLCL. Wisconsin Stat. § 180.0828(1)(a) provides:

(1) Except as provided in sub. (2), a director is not liable to the corporation, its shareholders, or any person asserting rights on behalf of the corporation or its shareholders, for damages, settlements, fees, fines, penalties or other monetary liabilities arising from a breach of, or failure to perform, any duty resulting solely from his or her status as a director, unless the person asserting liability proves that the breach or failure to perform constitutes any of the following:

(a) *A willful failure to deal fairly with the corporation or its shareholders in connection with a matter in which the director has a material conflict of interest.*

(Emphasis added.)

conflict of interest from voting their ownership interest with respect to a given matter. Rather, it prohibits members with a material conflict of interest from acting in a manner that constitutes a willful failure to deal fairly with the LLC or its other members. We interpret this requirement to mean that members with a material conflict of interest may not willfully act or fail to act in a manner that will have the effect of injuring the LLC or its other members. This inquiry contemplates both the conduct along with the end result, which we view as intertwined. The inquiry also contemplates a determination of the purpose of the LLC and the justified expectations of the parties.

¶ 32. Here, the circuit court made no express determination as to whether the petitioners willfully failed to deal fairly in spite of the conflict of interest. Under the circuit court's analysis, there was no need to reach this issue because the court reasoned that a material conflict of interest precluded any vote to transfer the property.

¶ 33. The court of appeals did address the question of whether the petitioners dealt fairly. In doing so, it found that the transfer was unfair in two respects. First, the conveyance was not an "arm's length transaction" because it did not occur on the open market. *Gottsacker,* 269 Wis. 2d 667, ¶ 21. Second, the sale made it impracticable for New Jersey LLC to carry on with its intended business (i.e., to hold the commercial property as a long-term investment). *Id.,* ¶ 22.

¶ 34. The petitioners complain that the court of appeals exceeded its constitutional authority by making such findings. Specifically, they challenge the court of appeals' determination that Monnier and Paul's actions made it impracticable for New Jersey LLC to carry on its intended business of long-term investment. Accord-

ing to the petitioners, no such intention is found in either the Articles of Organization or Member's Agreement. Moreover, such an alleged purpose is contrary to the fact that the Wilson Avenue property was purchased and sold by New Jersey LLC on a short-term basis. Additionally, the petitioners assert that there has been no determination that Gregory received less than fair value for his share of the equity of the property. At oral argument, they noted that the purchase price exceeded the assessed value.

¶ 35. We agree with the petitioners that the court of appeals improperly made findings of fact in this case. As we explained in *Wurtz v. Fleischman,* 97 Wis. 2d 100, 107, n. 3, 293 N.W.2d 155 (1980), the court of appeals is not empowered to make such determinations:

> The court of appeals is by Constitution limited to appellate jurisdiction. Art. VII, sec. 5(3), Wis. Const. This precludes it from making any factual determination where the evidence is in dispute. This is a power reserved to trial courts or to the supreme court under appropriate procedures in the exercise of its constitutional grant of original jurisdiction. The court of appeals has, of course, additional constitutional jurisdiction in respect to its supervisory authority over actions and proceedings in the trial court. This grant of jurisdiction does not confer the right to make findings of fact where the evidence is controverted.

¶ 36. Accordingly, we remand the cause to the circuit court for further findings and application of the foregoing standard. Consistent with Wis. Stat. § 183.0402(2), Monnier and Paul on remand shall also "account to the limited liability company and hold as trustee . . . any improper personal profit derived by that member . . . without the consent of a majority of the

380

disinterested members" for the transfer in question. If it is determined by the court that this statute was violated, then the court will determine the appropriate remedy under the circumstances.

## VI

¶ 37. In sum, we conclude that the petitioners possessed the majority necessary to authorize the transfer in question. Furthermore, we determine that the petitioners' material conflict of interest did not prohibit them from voting to make the transfer so long as they dealt fairly. However, because there was no express determination by the circuit court as to whether the petitioners willfully failed to deal fairly with New Jersey LLC or its other member, we reverse the decision of the court of appeals and remand the cause for further proceedings.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court.

¶ 38. PATIENCE DRAKE ROGGENSACK, J. (*concurring*). I write in concurrence to further explain the foundation for decisions under the provisions of Wis. Stat. ch. 183 (2001–02),[1] Wisconsin's limited liability company statute. In so doing, I focus on the nature of a member's interest in a limited liability company and on the specifics of New Jersey LLC, which drive the remedy available to Gregory Gottsacker on remand. I conclude that whether Julie Monnier and Paul Gottsacker dealt fairly with Gregory Gottsacker turns on

---

[1] All further references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

381

the provisions of ch. 183 and the majority opinion's interpretation of the Member's Agreement of New Jersey LLC.

¶ 39. Accordingly, as I explain in more detail below, the remedy available on remand is an accounting to accurately determine the fair market value[2] of the property sold by New Jersey LLC, and if Gregory has not been paid his fair share of any profit achieved through that sale, Julie and Paul must compensate him for any lost profit he sustained when the Sheboygan warehouse was sold. Because it is not apparent from the record whether the circuit court conducted a fact-finding to determine the fair market value of the Sheboygan warehouse and therefore it is not possible for us to determine as a matter of law whether Paul and Julie earned improper personal profits on the warehouse sale, I concur in the majority opinion's decision to remand, as well as its reversal of the court of appeals decision.

## I. BACKGROUND

¶ 40. In September of 1998, Julie filed the Articles of Organization for New Jersey LLC; she was its sole member. Also in September of 1998, New Jersey LLC purchased the Sheboygan warehouse for $510,000. Julie personally guaranteed the loan that was used to purchase the warehouse.

---

[2] The court of appeals made much of its finding that the sale of the Sheboygan warehouse was not made in an arms-length transaction and therefore the price paid may have been too low. However, the name of the purchaser of the warehouse is not dispositive of whether Gregory was dealt with fairly. Rather, Julie and Paul were obligated to obtain the fair market value for the property, no matter who bought it.

¶ 41. Paul and Gregory became members of New Jersey LLC in 1999. There was no 1998 operating agreement establishing terms for New Jersey LLC different from those provided in ch. 183. However, at the time Paul and Gregory became members of New Jersey LLC, they entered into a "Member's Agreement," which states in relevant part:

> The Members ... acknowledge ... and assent to the operation of the Company under the WLLCL without amendment by an operating agreement;

> . . .

> 4. Julie A. Monnier shall own a 50% interest in the capital, profits and losses of [New Jersey LLC] and shall have 50% of the voting rights of [New Jersey LLC].

> 5. Paul Gottsacker and Greg Gottsacker, collectively, shall own a 50% interest in the capital, profits and losses of [New Jersey LLC] and shall have 50% of the voting rights of [New Jersey LLC].

¶ 42. After Paul and Gregory became members of New Jersey LLC, it purchased the Wilson Street real estate, which it held for a period of time and then sold for a profit. Julie received 50% of the profits from that sale, Paul received 25% of the profits and Gregory received 25%.

¶ 43. In June of 2001, New Jersey LLC sold the Sheboygan warehouse to another limited liability company, of which Gregory was not a member, for the same price New Jersey LLC paid for it in 1998, $510,000. Although Gregory did not vote in favor of the sale, Julie and Paul contend that he received 25% of the transaction profits. Because Gregory did not vote to sell the Sheboygan warehouse and because he contends he did

not receive the profits to which he was entitled, he seeks to rescind the sale.

## II. DISCUSSION

### A. Standard of Review

¶ 44. I review, as a matter of law, the prior court's decision that due to Julie and Paul's conflict of interest in voting to sell the Sheboygan warehouse they violated Wis. Stat. § 183.0402 and Wis. Stat. § 183.0404, requiring rescission of the sale. *Tahtinen v. MSI Ins. Co.*, 122 Wis. 2d 158, 166, 361 N.W.2d 673 (1985) (the application of a statute to a set of facts presents a question of law).

### B. Gregory's Claims

¶ 45. A limited liability company is a business entity created by statute where those who hold an interest in the entity are known as members. Wis. Stat. §§ 183.0102(15), 183.0801. The rights and obligations of a limited liability company to its members, of the members to the limited liability company and to each other are set by ch. 183. Common law concepts such as the fiduciary duty of a majority shareholder of a corporation to a minority shareholder are replaced by statutory obligations.[3] Wis. Stat. §§ 183.0402, 183.1302(3). Those rights and obligations may be adjusted through a contract generically known as an operating agreement. Wis. Stat. § 183.0102(16). Here, Julie, Paul and Greg, in the Member's Agreement, agreed to be bound by the

---

[3] The court of appeals improperly engrafted a common law fiduciary duty on Julie and Paul's status as members. Members' obligations are set by statute.

provisions of ch. 183, without amendment by an operating agreement. Therefore, with the exception of the allocation of member interests set out in the Member's Agreement, the rights and obligations of the parties before us are found in ch. 183.

### 1. Gregory's derivative claim

¶ 46. Gregory sued Julie and Paul in the name of New Jersey LLC, as well as in his own name. As an affirmative defense to that claim of the complaint, Julie and Paul asserted that Gregory had no statutory authority and no standing to sue on behalf of New Jersey LLC.

¶ 47. Not every member of a limited liability company has the right to bring an action in the name of the limited liability company. Wis. Stat. § 183.0305. The requisite qualifications to do so are set out in Wis. Stat. § 183.1101. Therefore, Gregory must meet those statutory parameters in order to sue in the name of New Jersey LLC. Neither the circuit court nor the court of appeals decided whether Gregory had statutory authority to bring an action on behalf of New Jersey LLC. The majority opinion also does not address the issue, possibly because the parties focused their briefs on whether the sale of the Sheboygan warehouse was valid without Gregory's consent. Because it may be an issue on remand, I point out that it has not been decided whether Gregory has met the statutory prerequisites to bring a derivative claim.[4]

---

[4] In the context of corporate law, a derivative claim for relief permits an individual shareholder to sue to enforce a claim for relief that belongs to the corporation by claiming the action of another injured the corporation. *See Einhorn v. Culea,* 2002 WI 65, ¶ 16, 235 Wis. 2d 646, 612 N.W.2d 78. There are some restrictions on a shareholder's ability to bring a derivative action.

¶ 48. The requirements that must be satisfied before a member can bring a derivative claim on behalf of a Wisconsin limited liability company are set out in Wis. Stat. § 183.1101 and § 183.0404(1)(a). Section 183.1101 requires in relevant part:

> (1) Unless otherwise provided in an operating agreement, an action on behalf of a limited liability company may be brought in the name of the limited liability company by one or more members of the limited liability company, . . . if the members are authorized to sue by the affirmative vote as described in s. 183.0404(1)(a), except that the vote of any member who has an interest in the outcome of the action that is adverse to the interest of the limited liability company shall be excluded.

Section 183.0404(1)(a) provides in relevant part:

> (1) Unless otherwise provided in an operating agreement . . . an affirmative vote, approval or consent as follows shall be required to decide any matter connected with the business of a limited liability company:

> (a) If management of a limited liability company is reserved to the members, an affirmative vote, approval or consent by members whose interests in the limited liability company represent contributions to the limited liability company of more than 50% of the value, as stated in the records required to be kept under s. 183.0405(1), of the total contributions made to the limited liability company.

¶ 49. It is undisputed that Gregory's member interest does not comprise "more than 50% of the value . . .

---

*See McGivern v. Amasa Lumber Co.,* 77 Wis. 2d 241, 252 N.W.2d 371 (1977). The concept of derivative claims has been engrafted into the law of limited liability companies. Wis. Stat. § 183.1101; *Elf Atochem N. Am., Inc. v. Jaffari,* 727 A.2d 286, 293–94 (Del. 1999).

of the total contributions made" to New Jersey LLC, as Wis. Stat. § 183.0404(1)(a) requires. However, no Wisconsin appellate decision has decided the meaning of "adverse to the interest of the limited liability company" stated in Wis. Stat. § 183.1101(1). Perhaps it depends on what the operating agreement says; however, there is no operating agreement here. Additionally, the purpose of New Jersey LLC is not stated in its Articles of Organization or in the Member's Agreement.[5] Furthermore, Wisconsin's limited liability company law was created to afford a flexible and informal form of doing business. *See* Joseph W. Boucher, et al., *Next Economy Legislation: Allowing Complex Business Reorganizations,* Wisconsin Lawyer, Aug. 2002, at 19. And finally, a limited liability company that was formed before October 1, 2002 can be dissolved if a member dissociates from the limited liability company. Wis. Stat. § 183.0901(4). New Jersey LLC was formed before October 1, 2002. Therefore, it had no expectation of perpetual operation. Those are some of the questions that a derivative claim presents. However, I leave this issue undecided, as does the majority opinion, but I note that the parties are not free to do so on remand, if Gregory continues to sue in the name of New Jersey LLC, as well as on his own behalf.

2. Gregory's individual claim

¶ 50. I begin by noting that the nature of a member's interest in a limited liability company is personal property. Wis. Stat. § 183.0703. As a member, Gregory has a right to receive a share of the profits and

---

[5] Therefore, there is no basis for the court of appeals finding that New Jersey LLC "was formed to hold the [Sheboygan warehouse] as a long-term investment."

losses of New Jersey LLC and the right to "vote or participate" in the management of New Jersey LLC. Wis. Stat. § 183.0102(11). However, Gregory never had an interest in real property in regard to the Sheboygan warehouse.

¶ 51. I agree with the majority opinion that Gregory had the right to be dealt with fairly by members of New Jersey LLC who had a "material conflict of interest" in regard to the sale of the Sheboygan warehouse.[6] Majority op., ¶ 31; Wis. Stat. § 183.0402(1)(a). I also agree that if Julie and Paul acquired any "improper personal profit" in connection with the sale of the Sheboygan warehouse, they hold such improper personal profit in trust for Gregory. Wis. Stat. § 183.0402(2).

¶ 52. Gregory contends that Julie and Paul could not vote to sell the warehouse because they had a conflict of interest in the matter. Again, I agree with the majority opinion's conclusion that ch. 183 does not preclude a member who has a material conflict of interest in a transaction from casting a valid vote on it. Majority op., ¶ 31. Accordingly, the sale is valid, but what remains on remand is to assess whether Gregory is due a payment different from that which he has received.

¶ 53. The majority has concluded that Gregory held a 25% interest in profits, losses and votes in New Jersey LLC. Majority op., ¶ 25. I concur in the majority opinion's interpretation of the Member's Agreement. In addition, the majority opinion's interpretation is consistent with the K-1 form Gregory filed with his federal

---

[6] I also agree with the majority opinion that Julie and Paul had a material conflict of interest in voting to sell the Sheboygan warehouse owned by New Jersey LLC. Majority op., ¶ 26.

taxes. On his K-1, Gregory declared that he had a 25% interest in the "profit sharing," "loss sharing" and "ownership of capital" for New Jersey LLC.

¶ 54. Gregory further claims that his right to vote on the proposed sale of the Sheboygan warehouse was violated because Julie and Paul did not give him notice of the potential sale and ask for his consent to the transaction. The majority opinion does not address this contention. Both Wis. Stat. § 183.0102(11) and Wis. Stat. § 183.0404(1) address a member's vote on matters connected with the business of a limited liability company.[7] Julie and Paul do not contend that Gregory had no right to vote, and I found nothing to support such a position. Accordingly, I conclude that Gregory did have a right to vote, give approval or consent on the sale of the Sheboygan warehouse, according to these provisions. Therefore, I compare Gregory's 25% member interest with the requirements of § 183.0404(1)(a) to determine if he had sufficient member interest to preclude the sale.

¶ 55. Wisconsin Stat. § 183.0404(1)(a) establishes that the member vote, approval or consent necessary must be "*more than 50%* of the value . . . of the total contributions made to the limited liability company." (Emphasis added.) It is uncontested that Julie contributed 50% of the value of the contributions made to New Jersey LLC. The majority opinion concludes that Paul contributed 25% of the contributions to New Jersey LLC and that Gregory contributed 25% of the contributions. Majority op., ¶ 25. Accordingly, Gregory's interest is insufficient to satisfy the statutory criteria for

---

[7] Wisconsin Stat. § 183.0102(11) provides that a member's interest "means a member's rights in the limited liability company, including the member's . . . right . . . to vote or participate in management of the limited liability company."

member participation that will determine whether a transaction occurs. Therefore, the fact that Gregory was not given the opportunity to vote against the sale of the Sheboygan warehouse had no effect on whether a valid sale occurred.

## III. CONCLUSION

¶ 56. On remand, the circuit court must first address whether Gregory is seeking to maintain a derivative action or solely an action in his own name. If he seeks to maintain both types of action, the circuit court must determine whether he meets the statutory criteria to do so. In determining whether Julie and Paul dealt fairly with Gregory and/or New Jersey LLC, the circuit court must determine the fair market value of the Sheboygan warehouse on the date of the sale. There must then be an accounting of the profits that resulted from the sale and a comparison of that number with the payment Gregory received. Because the majority opinion determines that Julie and Paul had a conflict of interest in the sale of the warehouse, any profits they retained in excess of 75% of the profits will be improper personal profits that they hold in trust for Gregory.

¶ 57. Accordingly, I concur in the mandate of the majority opinion.

¶ 58. I am authorized to state that Justice JON P. WILCOX joins in this concurrence.

¶ 59. LOUIS B. BUTLER, JR., J. (*dissenting*). At times, issues are complex and therefore are in need of complex resolutions. At times, we tend to see complexity where none exists. This, I conclude, is one of those occasions where the issue and its resolution are simple. Because there was no affirmative vote, approval, or

consent to transfer the warehouse property owned by New Jersey LLC to a new limited liability company called 2005 New Jersey LLC, as required by the Member's Agreement and Wis. Stat. § 183.0404(1) (2001–02), no legal transfer of the property took place. As such, I would affirm the court of appeals, albeit on different grounds. I therefore respectfully dissent.

¶ 60. I agree with the majority's overall analysis of the overview and history of limited liability companies. Majority op., ¶¶ 14–19. The majority correctly notes that the overriding goal of the Wisconsin Limited Liability Company Law (WLLCL) was to create a business entity providing, among other things, simplicity. Majority op., ¶ 19. The drafters of Wis. Stat. ch. 183 emphasized the importance of flexibility and freedom of contract and hoped that the LLC would provide an inexpensive vehicle that did not require legal counsel at every step. *Id. See also,* Joseph Boucher et al., *LLCs and LLPs: A Wisconsin Handbook* § 1.11 (rev. ed. 1999).

¶ 61. The meaning of the Member's Agreement signed on January 13, 1999, by Julie Monnier, Paul Gottsacker, and Gregory Gottsacker is at issue here. The relevant portion of the agreement is as follows:

> (4) Julie A. Monnier shall own a 50% interest in the capital, profits and losses of Company and shall have 50% of the voting rights of Company.

> (5) Paul Gottsacker and Gregory Gottsacker, collectively, shall own a 50% interest in the capital, profits and losses of Company and shall have 50% of the voting rights of Company.

When the terms of a contract are plain and unambiguous, we will construe it as it stands. *Borchardt v. Wilk,* 156 Wis. 2d 420, 427, 456 N.W.2d 653 (Ct. App. 1990) (*citing Ford Motor Co. v. Lyons,* 137 Wis. 2d 397, 460,

405 N.W.2d 354 (Ct. App. 1987)). Because I see no ambiguity, I would use the terms of the agreement to ascertain its meaning.

¶ 62. Part (4) of the agreement clearly states that Julie Monnier owns a 50 percent interest in the Company, and *shall* have 50 percent of the voting rights of Company. Part (5) clearly provides that the Gottsacker brothers collectively own a 50 percent interest in the Company and "*shall* have 50% of the voting rights of Company." (emphasis added). There is no ambiguity in the construction of this agreement. Part (4) defines a separate 50 percent interest and voting right, and part (5) defines a separate 50 percent interest and voting right. Part (5) could have been written to provide each brother with a 25 percent share of the collective interest and voting right, but it was not drafted in that manner. Instead, the interest *and* the voting right were created as a collective.

¶ 63. The term "collectively" is not defined in the document. Majority op., ¶ 23. Accepting the definition for collectively that the majority adopts which was relied upon by the trial court creates no ambiguity. *Id.* That definition provided: "formed by collecting; gathered into a whole . . . designating or any enterprise in which people work together as a group, especially under a system of collectivism . . . ." *Id. See also Webster's Third New Int'l Dictionary* 445 (unabr. 1986) (defining "collectively" as "in a collective sense or manner: in a mass or body: in a collected state: in the aggregate: by collective acts."). I disagree with the conclusion that the definition relied upon, or any definition for that matter, supports Monnier and Paul's position that Paul and Gregory each had an individual 25 percent voting right in the LLC.

¶ 64. If a "collective" is formed by collecting, it is the collective that remains, not the individual collected items. If it is gathered into a whole, it is the whole that remains. If it is an enterprise in which people work together as a group, it is the group that remains. I concur with the majority's conclusion that the term "collectively" refers to the sum of the brothers' interests, majority op., ¶ 25, but that does not alter the fact that it is the sum that remains, and not the individual interests. Any other construction effectively rewrites the agreement entered into by these individuals.

¶ 65. Of course we must reject a construction resulting in unfair or unreasonable results, and give a construction that will render the contract a rational business instrument. Majority op., ¶ 24. There is nothing unfair nor unreasonable about construing this agreement as the parties wrote it. Nor is the agreement an irrational business instrument. It was the parties that specified the two separate 50 percent interests in New Jersey LLC. It was the parties that specified the two separate voting blocks. They could have chosen to draft the agreement to take into account each person's individual interest and voting rights, but the parties chose not to do so. If the parties choose to set forth an agreement that requires the brothers to vote together as one interest, this court should not stand in their way. If the drafters of Wis. Stat. ch. 183 emphasized the importance of flexibility and freedom of contract, then we ought to respect the flexibility and freedom of this agreement. In short, the trial court got it right when it concluded that Paul Gottsacker lacked the authority to act without the assent of his brother.

¶ 66. Gregory Gottsacker did not agree to or even know about the transfer of the warehouse engineered by petitioners in this matter. Thus, the collective pro-

vided in part (5) of the agreement never voted, approved, or consented to that transfer, as is required by Wis. Stat. § 183.0404(1). I therefore agree with the trial court that the warehouse should be returned from 2005 New Jersey LLC to New Jersey LLC. Accordingly, I respectfully dissent.