Colin Christopher **FELTON**, Plaintiff,

v.

**TEEL PLASTICS, INC.** and **Jay L. Smith**, Defendants.

No. 09–cv–180–bbc.

United States District Court,
W.D. Wisconsin.

July 12, 2010.

Order Denying Reconsideration
Aug. 26, 2010.

Lawrence Bensky, Law Office of Lawrence Bensky, LLC, Anne Maryse Bensky, Garvey McNeil & Associates, S.C., Madison, WI, for Plaintiff.

Michael B. Van Sicklen, Foley & Lardner LLP, Roberta Howell, Holly C. Pomraning, Melli Law, S.C., Lori Marie Lubinsky, Axley Brynelson, LLP, Madison, WI, for Defendants.

## OPINION AND ORDER

BARBARA B. CRABB, District Judge.

From 2000 to 2008, plaintiff Colin Christopher Felton and defendant Teel Plastics, Inc. jointly owned Teel Global Resources Tech, LLC. Defendant Teel Plastics owned 70% of the company, plaintiff owned 30% and defendant Jay Smith was the manager. Plaintiff left the company in 2004 after a number of disagreements with defendant Smith, but he kept his 30% interest in the company. Plaintiff had no other contact with the company until early 2009, when he received notice that defendant Teel Plastics had exercised its right under § 9.01 of the operating agreement to dissolve the company. Relying on an accounting performed by Virchow Krause several months earlier, defendants deter-

mined that Teel Global had no assets to distribute because it was more than $5 million in debt to defendants Teel Plastics and Smith.

Plaintiff filed this lawsuit in March 2009. In his pro se complaint, he asserted two "counts": one for "unauthorized disclosure of confidential information" and one for "negligent management" of a Teel Global project. Dkt. # 1. After obtaining counsel, he filed an amended complaint in which he abandoned his original claims and asserted new ones for breach of fiduciary duty, breach of contract and violations of Wis. Stat. Ch. 183. In addition, plaintiff requested an accounting. In an order dated October 5, 2009, 664 F.Supp.2d 937 (W.D.Wis.2009), I granted defendants' motion to dismiss plaintiff's breach of fiduciary claim because plaintiff alleged injuries to Teel Global rather than to himself. Dkt. # 46.

Now before the court are two motions for summary judgment filed by defendants on plaintiff's remaining claims. Dkts. ## 74 and 84. With the exception of the claim for an accounting under § 9.3 of the operating agreement, plaintiff has failed to develop a meaningful argument or set forth specific facts in support of his statutory claims and his claims for breach of contract. Summary judgment will be granted to defendants on these claims.

With respect to plaintiff's claim for an accounting under § 9.3, I agree with defendants that plaintiff has failed to make any showing that the accounting conducted by Virchow Krause in 2008 incorrectly calculated Teel Global's assets and liabilities by more than $5 million. However, the Virchow Krause accounting valued the company as of December 2007 and the company was not dissolved until December 2008. Although § 9.3 of the operating agreement required an accounting "from the date of the last previous accounting until the date of dissolution," no accounting was conducted after dissolution.

Neither side addressed the questions whether defendants (rather than Teel Global) are the appropriate parties to be sued for enforcement of § 9.3 and whether specific performance is appropriate under the circumstances of this case. Accordingly, I am directing the parties to submit supplemental materials answering these questions.

From the parties' proposed findings of fact and the record, I find that the following facts are undisputed.

## UNDISPUTED FACTS

### A. Formation of Teel Global

In 1996, plaintiff Colin Felton formed Global Resources, LLC in Madison, Wisconsin "to develop materials, products and processes utilizing natural fiber-thermoplastic composites." The process involves combining fibers made out of natural materials such as wood with plastics to create products such as roof panels and hot tub siding. Global Resources sold the composite materials to third parties for injection molding.

In 1998 plaintiff began looking for investors in his company. Between 1998 and 2000 plaintiff met several times with defendant Jay Smith, who was the owner of defendant Teel Plastics, Inc., a Wisconsin manufacturer of plastic tubing, fiberglass and other plastic products.

In February 2000, plaintiff and defendants formed Teel Global Resources Tech, LLC. Defendants drafted the operating agreement, which included the following provisions:

4.12 Liability for Certain Acts. The Manager(s) shall perform their managerial duties in good faith, in a manner they reasonably believe to be in the best interests of the Company, and with such

care as an ordinarily prudent person in a like position would use under similar circumstances. A Manager who so performs the duties of Manager shall not have any liability by reason of being or having been a Manager of the Company. Except as provided in the Wisconsin Act or this Agreement, a Manager shall not be liable to the Company or to any Member for any loss or damage sustained by the Company or any Member, unless the loss or damage is the result of fraud, willful misconduct, material breach of fiduciary duty or a wrongful taking by the Manager.

\* \* \*

7.3 Books and Records. The Company shall establish such books, records and accounts for the Company as are customary for businesses similarly situated and as accurately reflect the financial condition and position of the Company in accordance with generally accepted accounting principles consistently applied.

\* \* \*

8.6 Notice of Fundamental Company Transactions. The Manager shall provide Felton with written notice of (a) merger, consolidation or reorganization of the Company; (b) sale, lease, exchange or other disposition of all or substantially all of the Company's property or assets; or adoption of any plan or agreement to do any of the foregoing.

\* \* \*

9.1 Dissolution, The Company shall not be dissolved upon the dissociation of any Member. Rather, the Company shall only be dissolved upon the occurrence of any of the following events: (a) By the written agreement of Members owning or holding at least a majority of the outstanding Units; or (b) Upon the judicial dissolution of the Company pursuant to the Wisconsin Act.

\* \* \*

9.3 Liquidation. Upon dissolution, an accounting shall be made of the accounts of the Company and of the Company's assets, liabilities and operations, from the date of the last previous accounting until the date of dissolution.

Under the agreement, defendant Teel Plastics owned 70% of the membership interests and plaintiff owned 30%. Defendant Smith was the manager of Teel Global. Under a separate agreement, plaintiff became an employee of Teel Global.

### B. *Management of Teel Global*

In 2001 defendant Teel Plastics constructed a building for Teel Global's operations. Teel Plastics' monthly mortgage payment for the building was $16,427; Teel Global paid Teel Plastics $16,500 a month in rent.

In April 2002, plaintiff wrote defendant Smith, expressing "concerns regarding the viability and path" of Teel Global. Plaintiff believed that Teel Global was "quickly l[o]sing [its] advantage as THE natural fiber composites company" because it did "not have a definitive corporate strategy for rapidly capturing market share" and it had "not committed to a single 'first' product that will establish [it] in the marketplace and generate needed income for continued product development." Plaintiff set forth a number of proposals for Smith's consideration. Plaintiff and defendant Smith met to discuss plaintiff's concerns. (The parties dispute Smith's response to the letter.)

In 2003 and 2004 representatives of defendant Teel Plastics and Teel Global met with Elk Corporation, a roofing manufacturer, regarding the potential manufacture of a roofing product. In February 2004 Teel Plastics formed TGRT Roofing, LLC, which entered into a "Product Development, Purchase and Sale Agreement" with Elk to "design, develop, test and produce a

prototype composite polymer roofing product." (Plaintiff refers to the product as "Panelshake," but the evidence he cites does not use that name.) Neither plaintiff nor Teel Global held any interest in the new company.

On February 12, 2004, plaintiff sent a memo to defendant Smith about the Elk contract and various other issues. He wrote that he did not "see any real problems with" the contract, but wanted "to get an understanding of [his] role in the new company." He listed a number of concerns and stated that he "would like to reduce [his] time commitment to keep [his] stress level under control." Finally, he stated that he "would like to get a copy of [Teel Global's] tax returns (including all K–1s) for the past years, amend [Teel Global's] Operating Agreement, enter into an employment or consulting agreement and organize and sign an operating agreement for Teel–GRT Roofing LLC." Smith spoke to plaintiff about the matters in the memo. (Neither side proposed any fact about the content of that discussion or discussions.) Plaintiff's lawyer sent Smith a followup memo dated February 26, 2004, but Smith did not respond to it. In March 2004, plaintiff resigned as an employee, but retained his 30% interest in Teel Global.

A patent was "developed and obtained ... for the composite roofing panel that was to be manufactured for the Elk project." (It is not clear from the parties' proposed findings of fact who owned the patent. Oddly, neither side submitted a copy of the patent or even identified the patent number.) In April 2006 Elk terminated its contract with TGRT Roofing after "the product" failed a "fire test." "[T]he product was never commercially launched and ... no sales were ever recorded." Dft. Teel Plastics' PFOF ¶ 26, dkt. # 77; Plt.'s Resp. to Dft. Teel Plastics' PFOF ¶ 26, dkt. # 123.

Plaintiff's expert values the "Panelshake" product at between $2.2 million and $7.3 million. In January 2009, defendant Teel Plastics made a presentation to Owens–Corning regarding Panelshake.

In 2005 defendant Teel Plastics entered into a confidentiality agreement with Dow Agrosciences, LLC, to develop a natural fiber composite deck board product. In 2006, Dow approached Teel Plastics about a project involving pest control and termite stakes. This project was listed on the Teel Global "Opportunities Evaluation," which projected "potential yearly sales" at $1 million to $2 million. It listed the "probability of [the] project" as 50%. In addition, the evaluation stated, "[i]f pricing and development plan and sales agreement are agreed upon, then I think the probability increases to 85–90% that project will move forward."

In December 2008 Dow and defendant Teel Plastics were completing the plan to conduct test runs. The tests took place in February 2009. By the summer of 2009, Dow had hired Baker Tilly (formerly Virchow Krause) to seek an investor for the project. Baker Tilly prepared a memorandum that was given to investors, which included the following information: Dow and Teel Plastics had been working on the project together for some time, Dow would guarantee the price of the capital investment and it was a very attractive opportunity (in that it should provide a return of 18% with very little risk), assuming sales of one million units. By 2010, the assumption increased to more than three million units. Teel Plastics and Dow entered into a contract in April 2010.

Teel Global did not have its own bank account, separate from defendant Teel Plastics' account.

### C. Dissolution of Teel Global

According to defendants' records, Teel Global did not have net income for any of

the years it existed. In 2008, defendant Smith and Thomas Thompson (chief financial officer of Teel Plastics) began to consider dissolving Teel Global. At the request of defendant Teel Plastics, Virchow, Krause and Company, LLP, conducted an evaluation of the company. Defendants did not inform the accounting firm about the Dow project or provide it the document titled "TGRT Opportunities." (Defendants say that the Dow project was too speculative at that point to use it in the valuation.) In its August 2008 report, Virchow Krause concluded that, as of December 2007, Teel Global had $925,000 in assets, but that it owed $5.75 million to Teel Plastics and $283,000 to Smith. Virchow Krause did not give an opinion on "whether the financial statements of [Teel Global] ... presents fairly, in all material respects, the financial position of" Teel Global. After that report, Smith and Thompson agreed to dissolve Teel Global.

On December 11, 2008, Thompson emailed plaintiff, asking for his current address. Defendants Smith and Teel Plastics executed a Consent of Manager and Majority member, dissolving and liquidating Teel Global. Articles of Dissolution dated December 22, 2008 were filed with the Wisconsin Department of Financial Institutions. In a bill of sale signed by defendant Smith, Teel Global transferred all of its assets to defendant Teel Plastics in exchange for "cancell[ing]" all of Teel Global's debt to Smith and $643,000 of Teel Global's debt to Teel Plastics.

Plaintiff responded to Thompson's email on December 23, 2008. At that time, counsel for Teel Plastics sent plaintiff all the documents related to the dissolution.

## OPINION

### A. Subject Matter Jurisdiction

■ "The first question in every case is whether the court has jurisdiction." *Avila v. Pappas,* 591 F.3d 552, 553 (7th Cir.

2010). Even if the parties do not raise the issue, courts have an independent obligation to determine whether the case before them falls within one of the classes of cases that Congress has authorized the federal judiciary to decide. *Buchel–Rueg-segger v. Buchel,* 576 F.3d 451, 453 (7th Cir.2009). The parties have raised no federal question in this case, so the only potential basis for jurisdiction is 28 U.S.C. § 1332, which requires a showing that each defendant is a citizen of a different state from the plaintiff and that the amount in controversy is more than $75,000. *Smart v. Local 702 International Brotherhood of Electrical Workers,* 562 F.3d 798, 803 (7th Cir.2009); *Smoot v. Mazda Motors of America, Inc.,* 469 F.3d 675, 676 (7th Cir.2006).

■ The parties make a common mistake by stating in their proposed findings of fact that plaintiff is a "resident" of Texas and defendant Smith is a "resident" of Wisconsin. "[R]esidence and citizenship are not synonyms and it is the latter that matters for purposes of diversity jurisdiction." *Meyerson v. Harrah's East Chicago Casino,* 299 F.3d 616, 617 (7th Cir. 2002). *See also McMahon v. Bunn–O–Matic Corp.,* 150 F.3d 651, 653 (7th Cir. 1998) ("An allegation of residence is inadequate."). A person is not a "citizen" of a state under § 1332 simply because he lives there; he must intend to remain in the state as well. *Dakuras v. Edwards,* 312 F.3d 256, 258 (7th Cir.2002). Although the distinction may seem to be a subtle one, on multiple occasions the Court of Appeals for the Seventh Circuit has criticized and even sanctioned parties for failing to establish diversity jurisdiction with precise facts. *E.g., Camico Mutual Insurance Co. v. Citizens Bank,* 474 F.3d 989, 992 (7th Cir. 2007) (criticizing plaintiff because "the amended complaint only alleged the residence of two of the accounting firm's mem-

bers without stating the citizenship of each of the accounting firm's members"); *Bond-Pro Corp. v. Siemens Power Generation Inc.*, 466 F.3d 562 (7th Cir.2006) (sanctioning lawyers $1000 for failing to identify citizenship of parties).

Although the parties did not include facts about plaintiff's and defendant Smith's citizenship in their proposed findings of fact, the error is harmless because the record shows that plaintiff is a citizen of Texas and defendant Smith is a citizen of Wisconsin. Earlier in the case, plaintiff filed an affidavit in which he averred that he intends to stay in Texas indefinitely. Dkt. # 39. Defendant Smith admitted in his answer that he was a citizen of Wisconsin. Dkt. # 48, at ¶ 4. Because the parties agree in their proposed findings of fact that defendant Teel Plastics is incorporated in Wisconsin and has its principal place of business there, dkt. # 123, at ¶ 2, plaintiff has met his burden to show that his citizenship is different from defendants'. *Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737, 741 (7th Cir.2004) (corporation is citizen of state of incorporation and state in which its principal place of business is located).

■ The only information about the amount in controversy in the proposed findings of fact is plaintiff's conclusory allegation that "the amount in controversy exceeds the sum of or value of $75,000, exclusive of interest and costs." Plt.'s PFOF ¶ 1, dkt. # 124. Defendants do not directly dispute that allegation, but they "[a]ffirmatively allege that Plaintiff has failed to produce any evidence establishing that he is entitled to $1 or more from Defendants." Dfts.' Resp. to Plt.'s PFOF ¶ 1, dkt. # 131. Although defendants deny that plaintiff has proven damages, it does not matter for the purpose of establishing jurisdiction whether plaintiff is ultimately able to prove more than $75,000 in dam-

ages. *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 589 F.3d 881, 886 (7th Cir.2009) ("Ordinarily a failure to prove any damages does not disturb jurisdiction under a statute that sets a damages threshold. The failure is a failure on the merits rather than a failure of jurisdiction."); *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 513 (7th Cir.2006) ("Whether [the plaintiff] actually recovers more than $75,000 is immaterial."). Rather, the question is whether plaintiff satisfied the amount in controversy at the time he filed the amended complaint.

■ In the amended complaint, plaintiff alleged that the amount in controversy was greater than $75,000 and defendants did not deny that allegation. "When the jurisdictional threshold is uncontested, [the court] generally will accept the plaintiff's good faith allegation of the amount in controversy unless it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *McMillian v. Sheraton Chicago Hotel & Towers*, 567 F.3d 839, 844 (7th Cir.2009) (quotations omitted). Because plaintiff alleged in his complaint that defendants in many instances kept for themselves large sums of money that should have been allocated to Teel Global, I cannot say that "it appears to a legal certainty" that plaintiff's claims were worth less than $75,000 when he filed the complaint.

### B. *Accounting*

Plaintiff devotes most of his attention to his claim for an accounting. In his amended complaint, plaintiff alleged that he needed an accounting because defendants "hold property belonging to [him]—[his] interest in the assets of [Teel Global]," but he "does not know the amount of his property held by defendants." Am. Cpt. ¶¶ 38–39, dkt. # 20. Plaintiff does not give any further explanation of the basis for this

claim in his amended complaint or his brief, but his allegation that defendants are wrongfully holding his share of Teel Global's assets suggests that he believes defendant Teel Plastics concluded incorrectly when it dissolved Teel Global that Teel Global's liabilities outweighed its assets by more than $5 million. Thus, he wants an accounting to help him show that Teel Global was actually in the black when it was dissolved and that he is entitled to his share of the company's assets.

■ Although the standard for obtaining an accounting is not clearly defined, it is an equitable remedy and therefore not an absolute right. *Richman v. Security Savings and Loan Association,* 57 Wis.2d 358, 362–363, 204 N.W.2d 511, 513 (1973). In the cases cited by the parties, courts have most often concluded that an accounting is an appropriate remedy when the plaintiff has shown that the defendant owes him money, but through no fault of his own, the plaintiff is unable to determine the amount. *E.g., ABM Marking, Inc. v. Zanasi Fratelli, S.R.L.,* 353 F.3d 541, 545 (7th Cir.2003) (defendant owed plaintiff royalties, but plaintiff could not determine amount because of defendant's inadequate records); *State v. Chicago & N.W. Railway Co.,* 132 Wis. 345, 112 N.W. 515, 519 (1907) (accounting ordered to determine amount of licensing fees due). *See also Antigo Superior Nursing Home, Inc. v. First Federal S & L Association,* 51 Wis.2d 196, 200–02, 186 N.W.2d 265, 267–68 (1971) ("The need for discovery as to amounts due under all the agreements and liabilities deriving therefrom creates the reason and ground for seeking and being entitled to equity jurisdiction."). The party seeking an accounting has the burden to show that he has a right to one. 1 Am. Jur.2d *Accounting* § 66, at 695 (2005).

At the outset, plaintiff faces the difficulty that defendants conducted an accounting in 2008 through an accounting firm. If defendants had presented no evidence of the company's actual worth, it would be reasonable to require an accounting. *Perkins v. Brown,* 901 N.E.2d 63, 66 (Ind.Ct. App.2009) (ordering accounting because "[n]o evidence was presented regarding what the actual finances of [the company] were prior to the dissolution, including what income was actually received and what the actual expenses of the LLC were during this period of time"). However, it makes little sense to require defendants to undergo the expense of conducting a second accounting unless plaintiff has adduced evidence that the first one failed to reflect Teel Global's true financial condition at the time of dissolution. *Historic Charleston Holdings, LLC v. Mallon,* 381 S.C. 417, 673 S.E.2d 448, 454 (2009) (declining to require second accounting when plaintiff failed to show that benefit of doing so would justify delay and expense); *cf. Kennedy v. Miller,* 221 Ill.App.3d 513, 163 Ill.Dec. 934, 582 N.E.2d 200 (Ill.Ct. App.1991) ("If a party seeks credits against the accounting, such party has the burden to prove them.") Further, because the only purpose of an accounting is to show that the defendants owe plaintiff money, I would be unwilling to order another one unless plaintiff's evidence should suggest that the accounting firm's appraisal is wrong by more than $5 million. 1A C.J.S. *Accounting* § 6 (2005) (underlying purpose of accounting is to prevent unjust enrichment). Although it would defeat the purpose of an accounting to require plaintiff to show in advance everything a new accounting would reveal, I agree with defendants that plaintiff is not entitled to go on a burdensome, expensive fishing expedition without making a preliminary showing that doing so will change the original result. 1 Am.Jur.2d *Accounting* § 57, at 684 (2005) (accounting not appropriate if it "would result in great inconvenience and possible oppression to the defendant").

950

Plaintiff has not made the necessary showing. Much of plaintiff's evidence is directed at proving the wrong issue. For example, plaintiff argues that defendant Teel Plastics charged Teel Global too much in rent, excluded Teel Global from potentially lucrative business deals, disregarded plaintiff's opinions, failed to invest in Teel Global and generally engaged in "self-dealing transactions unfair to" Teel Global before the dissolution. Plt.'s Br., dkt. # 119, at 9. However, the purpose of an accounting is not to allow a dissatisfied party to second-guess every business decision made throughout a company's existence. An accounting determines what a company actually was worth at the time of dissolution, not what it *could have* been worth if the company had been managed differently. I have dismissed the complaint as to plaintiff's breach of fiduciary duty claim, so plaintiff cannot show that he is entitled to an accounting by submitting evidence that defendants did not run Teel Global the way he believes they should have. If plaintiff believed that defendants were running the company into the ground, he could have brought a derivative suit, but he chose not to.

Once plaintiff's evidence and argument about defendants' mismanagement is disregarded, plaintiff has little left to support his claim. The only specific criticisms of Virchow Krause's valuation in plaintiff's proposed findings of fact is that Virchow Krause failed to consider the value of the Panelshake roofing product and the value of a potential project with Dow Agrosciences. This argument falls short for several reasons.

First, it is not clear what plaintiff means when he says that the accounting firm failed to properly credit Teel Global's involvement with the Panelshake "product" and the Dow "project." In particular, plaintiff fails to explain how a "product" or a "project" can be used to value a company. If Teel Global had intellectual property rights in a valuable product or process, that would be a company asset. However, plaintiff never identifies with any specificity any intellectual property in Teel Global's possession at the time of dissolution. In fact, plaintiff's position seems to be that the patent or patents involved in the Panelshake product were assigned to defendant Teel Plastics, not Teel Global. Although plaintiff seems to believe that the patent or patents *should have* been assigned to Teel Global, that is another issue outside the scope of the lawsuit. (Defendants' position is that Teel Global was the original assignee of the patent, but that the patent was transferred to Teel Plastics after the dissolution to offset plaintiff's debt. If that is the case, plaintiff would have to show that defendants failed to properly value the patent, which he has not done.) With respect to the Dow project, plaintiff refers generally in his proposed findings of fact to "trade secrets" and "confidential and protected information," without identifying what these might be.

Plaintiff says that Virchow Krause should have considered Teel Global's potential future sales to Dow, but he never explains how, in the absence of a contract or other exclusive right, predictions about a future business relationship can be valued in the context of a dissolution. Defendants cite *T & HW Enterprises v. Kenosha Associates*, 206 Wis.2d 591, 605, 557 N.W.2d 480, 485 (Ct.App.1996), for the proposition that future profits are often too speculative to provide a basis for damages. This case is not directly on point because it involves a determination of damages for a breach of contract rather than a determination of the value of a company, but plaintiff cites no authority that would support a different rule under the facts of this case.

Plaintiff's argument about potential future sales of the company seems to be less about what Teel Global was actually worth at the time of dissolution and more about what the company *could have* been worth if defendants had held out longer. That is, plaintiff seems to be challenging defendant Teel Plastics' decision to dissolve the company when it did. Plaintiff does not deny that § 9.1 of the operating agreement gave Teel Plastics the right to dissolve Teel Global without plaintiff's approval. However, he says that Teel Plastics had a fiduciary duty to consider Teel Global's interests before deciding to dissolve.

Plaintiff cites no authority for the argument that defendant Teel Plastics would breach a fiduciary duty by doing what the operating agreement authorized it to do. However, even if Teel Plastics breached such a duty, it is too late to raise that issue now. In the order granting defendants' motion to dismiss with respect to plaintiff's breach of fiduciary claim, I did not read the complaint as including a claim that defendant Teel Plastics breached a fiduciary duty to plaintiff by dissolving Teel Global when it did. Plaintiff never filed a motion for reconsideration, arguing that I construed his claim too narrowly. Although plaintiff seems to be attempting to assert such a claim now, summary judgment is not the time to bring new claims into the case. *Grayson v. O'Neill,* 308 F.3d 808, 817 (7th Cir.2002) (plaintiff "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment") (quoting *Shanahan v. City of Chicago,* 82 F.3d 776, 781 (7th Cir.1996)). *See also EEOC v. Lee's Log Cabin, Inc.,* 546 F.3d 438, 443 (7th Cir.2008) ("The very first mention of [the new claim] came in the EEOC's response to Log Cabin's motion for summary judgment, and the [district] court was entitled to regard this as 'too late' to change so basic a factual premise in the case.")

Even if I assume that defendants' accounting was deficient because it failed to take into consideration "the Panelshake product" or "the Dow project," plaintiff has failed to adduce any specific evidence showing that defendants undervalued Teel Global by more than $5 million. Only two of plaintiff's proposed findings of fact address this issue. In proposed finding of fact no. 55, plaintiff says that "Robinwood Consulting estimates the net present value of the Panelshake as $7.3 million under one scenario and $2.2 million under another scenario." He cites generally to four different expert reports to support that proposed fact. In proposed finding of fact no. 60, he says that the "Dow termite stakes project was listed on the 'TGRT Opportunities Evaluation,' which stated potential yearly sales were $1.2 million dollars and estimated the project at 50% probability increasing to 85–90% probability if certain conditions were met."

Neither of these proposed facts is anything other than a mere conclusion. Plaintiff does not provide any support for them or explain how he arrived at them. These omissions are fatal to his claim at the summary judgment stage. *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) ("The object of [summary judgment] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."); *Hall v. Bodine Electric Co.,* 276 F.3d 345, 354 (7th Cir. 2002) ("It is well-settled that conclusory allegations ... do not create a triable issue of fact."); *Drake v. Minnesota Mining & Manufacturing Co.,* 134 F.3d 878, 887 (7th Cir.1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted."). Under this court's summary judg-

ment procedures, "*[a]ll* facts necessary to sustain party's position on a motion for summary judgment must be explicitly proposed as findings of fact." *Helpful Tips for Filing a Summary Judgment Motion,* *attached to* Preliminary Pretrial Conference Order, dkt. #29. If the support for these conclusions is lurking somewhere in the record, it is not defendants' or this court's obligation to find it. *Chelios v. Heavener,* 520 F.3d 678 (7th Cir.2008) ("Given the often daunting nature of motions for summary judgment, we have emphasized the importance of local rules and have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules.") (internal quotations omitted).

Alternatively, plaintiff argues that the records used in the 2008 accounting are unreliable. For example, in proposed finding of fact no. 74, plaintiff states that "[t]he statements of underlying financial information that Virchow Krause used to appraise [Teel Global] were unreliable due to use of commingled cash accounts, [Teel Global] had fixed assets on its books that benefited other Teel properties, improper recording of expenses, and overcharging for certain outside services." In proposed finding of fact no. 84, plaintiff says that defendants kept "inadequate records." Plaintiff is on the right track. An order for an accounting may be appropriate when the "accounts between the parties are of such a complicated nature that only a court of equity can satisfactorily unravel them." *Zell v. Jacoby-Bender, Inc.,* 542 F.2d 34, 36 (7th Cir.1976). However, it is not enough for plaintiff to assert generally that defendants' records are a hopeless mess. He must show that ordinary discovery is inadequate to provide the answers he seeks. *Kempner Mobile Electronics, Inc. v. Southwestern Bell Mobile Systems,* 428 F.3d 706, 715 (7th Cir.2005) (upholding denial of accounting because "all of the accounting information perti-

nent to Kempner's claims could and should have been revealed through discovery"); *Zell,* 542 F.2d at 36 ("Legal remedies should not be characterized as inadequate merely because the measure of damages may necessitate a look into the plaintiff's business records.") Without providing any details about the allegedly inadequate report, plaintiff has not made the required showing for an accounting.

Finally, plaintiff says that he was hindered in assessing the accuracy of the accounting because defendants withheld documents in discovery. However, if plaintiff believed that defendants were withholding relevant documents, the proper response would have been to file a motion to compel under Fed.R.Civ.P. 37 rather than remain silent until it is time to "put up or shut up." *Hammel v. Eau Galle Cheese Factory,* 407 F.3d 852, 859 (7th Cir.2005). At a minimum, plaintiff should have filed a motion for additional discovery under Fed.R.Civ.P. 56(f) as soon as defendants filed their motion for summary judgment.

Even if I construed plaintiff's argument as raising a belated request under Rule 56(f) for additional discovery, I would deny the motion. Rule 56(f) requires the party seeking relief to identify the "specific evidence which [he] might have obtained from [additional discovery] that would create a genuine issue [of] material fact." *Davis v. G.N. Mortgage Corp.,* 396 F.3d 869, 885 (7th Cir.2005). Plaintiff supports his argument with nothing but a conclusory allegation, stating in his proposed findings of fact that he "requested and did not receive other documents." Plt.'s PFOF ¶ 97, dkt. #124. He does not provide either a general description of the documents he believes he did not receive or an explanation of their relevance in showing that defendants valued Teel Global incorrectly.

One potential limitation of the accounting defendants performed is that it did not cover the last year before Teel Global was dissolved. I address this issue in the context of plaintiff's claim for breach of § 9.3 of the operating agreement.

### C. Breach of Contract

In his summary judgment brief, plaintiff argues that defendants violated four provisions of the operating agreement: (1) § 4.12, "Liability for Certain Acts"; (2) § 7.3, "Books and Records"; (3) § 8.6, "Notice of Fundamental Company Transactions"; and (4) § 9.3, "Liquidation." I will start with defendants' two general objections to these claims.

The first of these is that plaintiff does not have "standing" to bring a breach of contract claim because the claims belong to Teel Global instead of plaintiff as an individual. That conclusion, defendants say, follows necessarily from this court's October 5, 2009 decision in which I dismissed plaintiff's complaint as to his breach of fiduciary duty claim because the basis for that claim was an allegation that defendants had devalued the assets of Teel Global, an injury that belonged to Teel Global rather than plaintiff. Dkt. # 46, at 10–13 (citing *Notz v. Everett Smith Group, Ltd.*, 2009 WI 30, 316 Wis.2d 640, 764 N.W.2d 904; *Jorgensen v. Water Works, Inc.*, 2001 WI App 135, ¶¶ 18–19, 246 Wis.2d 614, 630 N.W.2d 230; *Rose v. Schantz*, 56 Wis.2d 222, 201 N.W.2d 593 (1972); *Read v. Read*, 205 Wis.2d 558, 556 N.W.2d 768 (Ct.App.1996)).

I disagree with defendants that the dismissal of plaintiff's breach of fiduciary duty claim requires dismissal of the breach of contract claims. As plaintiff points out, an important difference between the two types of claims is that plaintiff is a party to the operating agreement. Generally, contracts create enforceable rights between those who sign them. *Becker v. Crispell–Snyder, Inc.*, 2009 WI App 24, ¶ 9, 316

Wis.2d 359, 366, 763 N.W.2d 192, 196 ("A party wishing to enforce a contract must either be a party to that contract or a third-party beneficiary."). Defendants cite no authority for the proposition that the general rule does not apply to operating agreements for limited liability companies. None of the cases they cite applying the "derivative action doctrine" involved a claim for breach of contract. *Krier v. Vilione*, 2009 WI 45, 317 Wis.2d 288, 766 N.W.2d 517 (common law tort and statutory claims); *Kagan v. Edison Bros. Stores, Inc.*, 907 F.2d 690, 692 (7th Cir.1990) (tort). *See also Decker v. Decker*, 2006 WI App 247, 298 Wis.2d 141, 726 N.W.2d 664 (assuming that parties who signed operating agreement could sue for violations of that agreement)

It may be that some claims involving breach of an operating agreement could belong to the company rather than the parties who signed the contract, but that depends on whether the particular provision that was allegedly breached is directed toward protecting the interests of the company or the individual party. In this case, defendants simply argue generally that the derivative action doctrine applies to plaintiff's breach of contract claims. They do not address the language of each provision, although it is clear that at least some of these provisions create individual rights and obligations of the parties. For example, § 8.6 of the operating agreement required "[t]he Manager" to "provide *Felton* with written notice" of particular events. It would make no sense to treat a breach of that provision as an injury to the company rather than to plaintiff individually. In any event, because defendants fail to develop an argument that the derivative action doctrine applies to any of the provisions plaintiff is asserting in this case, that argument is forfeited. *Carmichael v. Village of Palatine, Illinois*, 605 F.3d 451, 460–61 (7th Cir.2010); *General Auto Ser-*

*vice Station v. City of Chicago*, 526 F.3d 991, 1006 (7th Cir.2008).

■■ Defendants' second general objection is that plaintiff's breach of contract claims must be dismissed because plaintiff has not proven damages. This argument confuses claims for breach of contract with tort violations. "The victim of a breach of contract is always entitled to nominal damages if he proves a breach but no damages. The victim of a tort, usually not." *Olympia Hotels Corp. v. Johnson Wax Development Corp.*, 908 F.2d 1363, 1372 (7th Cir. 1990) (citing *Vasselos v. Greek Orthodox Community*, 24 Wis.2d 376, 129 N.W.2d 243 (1964)). Thus, lack of damages is not grounds for dismissal.

I turn next to the particular provisions plaintiff is asserting in this case and defendants' specific objections to those assertions.

### 1. *Section 4.12*

■■ Arguing that he has a cause of action under the contract for wrongs done to him, plaintiff points to the last sentence of § 4.12, which states that "a Manager shall not be liable to the Company or to any Member for loss or damage sustained by the Company or to any Member, unless the loss of damage is the result of fraud, willful misconduct, material breach of fiduciary duty or a wrongful taking by the Manager." Plaintiff's reliance on this provision is misplaced. The provision makes it clear that it does not *create* a cause of action; rather, it *limits* the types of claims that may be asserted against the manager to those involving "fraud, willful misconduct, material breach of fiduciary duty or a wrongful taking by the Manager." Of the claims in this list, breach of fiduciary duty is the only one that plaintiff raised in his complaint, but I dismissed that claim in the October 5, 2009 order because it was a claim of the company rather than plaintiff individually. Plaintiff cannot revive that claim simply by repackaging it as a breach of contract by defendant Smith.

Plaintiff did not allege in his complaint any claims for fraud, willful misconduct or a wrongful taking, so he cannot raise them now. In any event, even if these claims were properly before the court, plaintiff has forfeited them by failing to develop any supporting argument or set forth specific facts in support of them. In the section of his brief discussing § 4.12, plaintiff says without elaboration that he "claims that Smith's conduct amounts to fraud, willful misconduct, material breach of fiduciary duty and wrongful taking by the Manager." Plt.'s Br., dkt. # 119, at 21. He includes a separate section about "willful misconduct," in which he responds to defendants' argument that they did not engage in "willful misconduct" as understood by the Wisconsin courts in *Gottsacker v. Monnier*, 2007 WI App 34, 299 Wis.2d 783, 2007 WL 259836 (unpublished) (interpreting "willful failure to deal fairly" under Wis. Stat. § 183.0402), and *IGL–Wisconsin Awning, Tent and Trailer Co., Inc. v. Greater Milwaukee Air and Water Show, Inc.*, 185 Wis.2d 864, 520 N.W.2d 279 (Ct.App.1994) (interpreting "wilful misconduct" under Wis. Stat. §§ 181.287 and 181.297). However, plaintiff's only argument is that those cases are not controlling because the court must engage in a "fact specific inquiry." Plt.'s Br., dkt. # 119, at 23. That is not helpful. Plaintiff does not identify a particular cause of action for "willful misconduct" that would apply to this case, much less explain why he believes defendant Smith engaged in such misconduct. Similarly, plaintiff says that defendants committed fraud in various ways, but he fails to propose specific facts supporting these allegations or explain how any of these alleged acts meet the elements for a fraud claim.

## 2. *Section 7.3*

This section required "[t]he Company" to "establish such books, records, and accounts for the Company as are customary for businesses similarly situated and as accurately reflect the financial condition and position of the Company in accordance with generally accepted accounting principles consistently applied." Even if I assume that § 7.3 gives one member a right to sue another member for inadequate record-keeping, this claim fails because plaintiff has not proposed any specific findings of fact regarding any alleged deficiencies in Teel Global's records.

## 3. *Section 8.6*

This section required "The Manager" to provide plaintiff with "written notice" of a "disposition of all or substantially all of the Company's property or assets." The parties do not seem to dispute that § 8.6 applied to the dissolution. In addition, the parties agree that defendants informed plaintiff of the dissolution and the transfer of Teel Global's assets to defendants, but not until after the events occurred.

 Because this claim applies to defendant Smith only, a threshold question is whether a violation of this provision could constitute "willful misconduct" or fraud as required by § 4.12 to permit a claim against defendant Smith. Plaintiff does not address this question in the context of his discussion of this claim. Instead, he focuses on the question whether the word "notice" necessarily implies that plaintiff was entitled to be informed of the dissolution before it occurred or whether notification after-the-fact is sufficient. The agreement does not define the term and dictionaries and case law do not provide a uniform definition. Some authorities define "notice" as a "warning." *E.g., American Heritage Dictionary* 1203 (4th ed.2000) However, other authorities define "notice" simply to mean "knowledge,"

without a temporal element. *State Central Credit Union v. Bayley,* 33 Wis.2d 367, 370, 147 N.W.2d 265, 268 (1967); *Black's Law Dictionary* (8th ed.2004). Plaintiff concedes that "[t]he term 'notice' has different meanings [and] is therefore ambiguous." Plt.'s Br., dkt. # 119, at 19. Although I agree with plaintiff that an ambiguous contract should be construed against the drafter, *Liebovich v. Minnesota Insurance Co.,* 2008 WI 75, ¶ 32, 310 Wis.2d 751, 773, 751 N.W.2d 764, 774, plaintiff's concession counsels against a finding that any breach by defendant Smith was willful or fraudulent. If defendant Smith chose one of two reasonable interpretations, it is difficult to argue that he engaged in willful misconduct or fraud, even if he chose the interpretation that better served his own interests. In any event, because plaintiff fails to develop an argument on this issue, he has forfeited it.

## 4. *Section 9.3*

Under this section, "[u]pon dissolution, an accounting shall be made of the accounts of the Company's and of the Company's assets, liabilities and operations, from the date of the last previous accounting until the date of dissolution." The parties agree that no accounting was performed for the year 2008; the Virchow Krause accounting valued the company as of December 2007.

Defendants' only argument with respect to this provision is that plaintiff has not proven any damages because he has not demonstrated that Teel Global decreased its debt or acquired any additional assets in 2008. This argument fails because plaintiff does not have to prove damages to prove a breach of contract. *Olympia Hotels,* 908 F.2d at 1372.

However, this claim raises two other questions that neither side addressed in their briefs. The first is whether defen-

dants may be sued at all for a violation of § 9.3. The provision does not expressly identify either of the defendants as responsible for performing the accounting; it just says that one must be performed. Because the accounting is for Teel Global, it may be that Teel Global was the proper party to be sued. *E.g., Gottlieb v. Northriver Trading Co. LLC,* 58 A.D.3d 550, 872 N.Y.S.2d 46 (N.Y.App.Div. 1st Dept. 2009). Although plaintiff suggests in his brief that Teel Global could not be named as a party in litigation after dissolution, this view seems to be contrary to Wisconsin law. Wis. Stat. § 183.0903(3) ("Dissolution of a limited liability company does not ... [p]revent commencement of a civil ... proceeding by or against the limited liability company.") Alternatively, if Teel Global is not the proper party, it is not clear whether the responsible party is defendant Teel Plastics as the party that ordered the dissolution or defendant Smith as Teel Global's manager.

A second issue is whether plaintiff is entitled to specific performance of this provision. Because specific performance is an equitable remedy, its allowance or refusal "rests in the discretion of the court." *Edlin v. Soderstrom,* 83 Wis.2d 58, 70, 264 N.W.2d 275, 281 (1978). Courts must consider a number of factors, including the fairness of ordering relief under the circumstances. *McKinnon v. Benedict,* 38 Wis.2d 607, 617–18, 157 N.W.2d 665, 669–70 (1968).

Because neither side addressed these issues, I will give them an opportunity to do so. In addressing the second question, the parties should discuss whether it is appropriate to order specific performance in this case without a showing that doing so could lead to an award of damages and, if not, which party should bear the burden of proving damages or the lack of damages. Further, in anticipation of the possibility that an accounting might be ordered, the parties should address their view of the proper scope of the accounting and submit a proposed order.

### D. *Statutory Claims*

Plaintiff contends that defendants violated several statutes in Wis. Stat. ch. 183, which govern the creation, management and dissolution of limited liability companies. In its opening brief, defendant Teel Plastics discusses each statute plaintiff identified in his amended complaint and explains why it believes it has not violated any of the statutes. Dft. Teel Plastics' Br., dkt. # 76, at 22–23. In his brief, plaintiff devotes one sentence to the merits of his claims under Wis. Stat. ch. 183: "Violation of §§ 183.0402, .0903 and 0905 rely upon the same facts supporting Plaintiff's breach of contract claims under sections 4.12 and 9.3 of the operating agreement." Plt.'s Br., dkt. # 119, at 25. That is insufficient to preserve this claim. Each of these statutes contains numerous provisions covering varying subjects. Even if plaintiff is relying on the same facts used to support his other claims, plaintiff cannot defeat defendants' motions for summary judgment without at least identifying the particular statutory provision he believes defendants violated and explaining the basis for his belief.

### ORDER

IT IS ORDERED that

1. The motions for summary judgment filed by defendants Teel Plastics, Inc., dkt. # 74, and Jay Smith, dkt. # 84, are GRANTED on all claims, with the exception of plaintiff Colin Christopher Felton's claim that defendants breached § 9.3 of the operating agreement by failing to perform an accounting "from the date of the last previous accounting until the date of dissolution." A decision is reserved on that claim pending the receipt of additional briefing from the parties.

2. The parties may have until August 2, 2010, in which to file supplemental materials addressing the following issues:

(1) whether defendant Teel Plastics or defendant Smith or both may be sued under § 9.3 of the operating agreement;

(2) whether plaintiff is entitled to specific performance for a violation of § 9.3; and

(3) the proper scope of the order, in the event that the court orders specific performance under § 9.3. The parties may have until August 12, 2010, in which to file responses to any other party's materials.

## OPINION AND ORDER

Plaintiff Colin Christopher Felton is suing defendants Teel Plastics, Inc. and Jay Smith because he believes they cheated him out of his fair share of the assets of the now-dissolved company he and Teel Plastics jointly owned, Teel–Global Resource Tech, LLC. (Defendant Jay Smith was the manager of Teel–Global and the owner of defendant Teel Plastics.) Defendants' position is that plaintiff is entitled to nothing because Teel–Global's debts outweighed its assets by more than $5 million at the time of dissolution. Plaintiff does not know how much the company was worth at the time of dissolution, but he believes he is entitled to an accounting under common law and Teel–Global's operating agreement so that this determination can be made. In addition, he has asserted claims for breach of contract and violations of Wisconsin statutes governing limited liability companies.

In an opinion and order dated July 12, 2010, I granted defendant's motion for summary judgment in most respects. In particular, I concluded that plaintiff had failed to show that he was entitled to an accounting with respect to Teel–Global's worth as of December 31, 2007, because an accounting firm had provided a valuation

of the company up until that time showing that the company was more than $5 million in the red and plaintiff had failed to adduce any specific evidence showing that the accounting firm's valuation was wrong. In addition, I concluded that plaintiff had not met his burden on summary judgment to show that defendants had violated § 4.12, § 7.3 or § 8.6 of the operating agreement or any Wisconsin statute. However, a question remained whether defendants could be held liable under § 9.3 of the operating agreement, which required an accounting "from the date of the last previous accounting until the date of dissolution," which was not until one year after the accounting firm provided its valuation. Accordingly, I directed the parties to provide supplemental briefs addressing two questions: (1) whether defendant Teel Plastics or defendant Smith or both may be sued for failing to conduct an updated accounting for Teel–Global; and (2) whether plaintiff is entitled to specific performance for a violation of § 9.3. In addition, I asked the parties to submit a proposed order in the event that I concluded that specific performance was an appropriate remedy for any violation of § 9.3.

The parties have responded to the July 12 order. In addition, plaintiff has filed a 36–page motion for reconsideration, significantly longer than even his summary judgment brief. The arguments in plaintiff's motion are not always easy to follow, but he seems to be raising four issues: (1) whether the court used the proper summary judgment standard; (2) whether the court erred in dismissing plaintiff's statutory claims; (3) whether the court erred in refusing to consider plaintiff's allegations of defendants' past misconduct in determining whether plaintiff is entitled to an accounting; and (4) whether the court erred in treating the accounting firm's valuation as admissible evidence. (Plaintiff raises another issue about the court's ap-

plication of the "business judgment rule," but I need not address the issue because I did not rely on such a rule in the summary judgment opinion or even discuss it.) Because plaintiff has adduced no evidence that defendants owe him money, I am denying plaintiff's motion for reconsideration and entering judgment in favor of defendants.

## OPINION

### A. *Motion for Reconsideration*

1. *Summary judgment standard*

Plaintiff argues that the court required too much of him to defeat defendants' motion for summary judgment. In particular, he says that the decision "appears to speak in terms more applicable to sufficiency of evidence at trial" than to the standard for summary judgment motions. Plt.'s Br., dkt. # 145, at 4. He repeats throughout his briefs that he need not prove his claim until trial. *Id.* at 4 ("It will be at trial for [plaintiff] to demonstrate the specific likelihood that ordering an accounting is reasonable and appropriate in light of all of the evidence."); *id.* at 34 ("Whether the right to discovery was sufficient in this case can only be determined at trial."); Plt.'s Br., dkt. # 143, at 8 ("This determination can only be made after the Court, at trial, hears all of the evidence."); Plt.'s Br., dkt. # 150, at 11 ("[T]rial is necessary to determine the type and scope of relief available to Mr. Felton."); *Id.* at 11–12 ("Mr. Felton believes that the evidence at trial . . . will demonstrate a strong likelihood that a fair, independent accounting will establish [Teel Plastics's] obligation to provide him compensation for his interest in" Teel–Global.)

Plaintiff's argument represents a fundamental misunderstanding of the summary judgment standard. Long ago the Supreme Court stated that the standard for surviving a motion for summary judgment "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)," which is whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Following *Anderson,* the Court of Appeals for the Seventh Circuit has reminded parties that "[s]ummary judgment is not a dress rehearsal or practice run; it is the . . . [moment] when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Schacht v. Wisconsin Dept. of Corrections,* 175 F.3d 497, 504 (7th Cir. 1999). Thus, plaintiff cannot simply say that all will be made clear at trial. He was required to show that his evidence was sufficient to permit a reasonable factfinder to render a verdict in his favor.

Plaintiff is correct that the inquiry under Fed.R.Civ.P. 56 focuses on whether the plaintiff has identified factual disputes. However, this does not mean that a plaintiff can defeat a motion for summary judgment simply by claiming that facts are disputed. "Only disputes as to facts which are material, i.e., facts that might affect the outcome of the suit under the governing law, and genuine, i.e., disputes for which the evidence is such that a reasonable jury could return a verdict for the nonmoving party, will preclude summary judgment." *Jenkins v. Bartlett,* 487 F.3d 482, 492 (7th Cir.2007). In many cases, plaintiff failed to show that disputes he identified were genuine *or* material. In any event, plaintiff is wrong to believe that his burden on summary judgment is different from his burden at trial.

2. *Statutory claims*

In the summary judgment order, I dismissed plaintiff's claims under Wis. Stat. ch. 183 because plaintiff had failed to develop an argument that either defendant

had violated any particular provision of that chapter. In his motion for reconsideration, plaintiff argues that the court erred in granting summary judgment on these claims because *defendants* failed to show that he did not have a viable claim.

 Again, plaintiff misunderstands the summary judgment standard. In cases like this one in which the moving party does not bear the burden of proof at trial, that party is not required to raise up and shoot down every possible argument that the nonmoving party might assert in support of a claim. It is plaintiff's burden to prove his claim, not defendants' burden to disprove it. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

 Plaintiff is correct that defendants had the initial burden, but it is not a heavy one. They simply needed to "infor[m] the district court of the basis for [their] motion." *Id.* at 323, 106 S.Ct. 2548. They met this burden by identifying each statute plaintiff cited in the complaint and arguing that none of them provided a basis for relief. At that point, it became plaintiff's burden to show that a reasonable jury could rule in his favor on each of those claims. Not only did plaintiff fail to meet that burden, he failed to articulate any reason why he believed defendants could be held liable under a particular statutory provision.

Even if it could be said that defendants did not put plaintiff on sufficient notice that he needed to identify the basis for his statutory claims in his summary judgment materials, plaintiff's motion for reconsideration proves that he is not entitled to a trial on those claims. Plaintiff had another opportunity in his motion to explain why he believes defendants violated his rights under Wis. Stat. ch. 183, but he failed yet again to provide even a hint of the alleged relevancy of those statutes to this case.

 primary purpose of summary judgment is "to weed out unfounded claims." *Gates v. Caterpillar, Inc.,* 513 F.3d 680, 688 (7th Cir.2008). It would defeat this purpose to hold a trial on claims when the plaintiff is unable to articulate the issues that need to be tried, despite multiple opportunities to provide an explanation.

### 3. *Defendants' alleged misconduct*

In his summary judgment materials, plaintiff argued that he was an entitled to an accounting under common law in part because defendants had made a number of decisions over the years that prevented the company from reaching its potential. However, I concluded that his allegations of wrongdoing were not relevant to his claim because "[a]n accounting determines what a company actually was worth at the time of dissolution, not what it could have been worth if the company had been managed differently." Dkt. # 140, at 15–16.

In his motion for reconsideration, plaintiff cites *HMO–W, Inc. v. SSM Health Care System,* 2000 WI 46, 234 Wis.2d 707, 611 N.W.2d 250, for the proposition that "Wisconsin law clearly permits misconduct evidence in an action involving the value of a minority member's interest in a legal entity." Plt.'s Br., dkt. # 145, at 13. Although plaintiff does not clearly explain how he believes the "misconduct evidence" is relevant in this case, his theory seems to be that any "self-dealing" by the defendants during any point of Teel–Global's existence should be used in determining what plaintiff was owed at dissolution and that such self-dealing sufficiently muddies the waters regarding Teel–Global's "true" worth to justify a judicially supervised accounting.

Plaintiff's argument is not persuasive for several reasons. First, he did not cite *HMO–W* in his summary judgment brief

or otherwise explain how he believed any past self-dealing by defendants should affect any calculation of his share of Teel–Global's assets. More important, he fails to explain even now why *HMO–W* is instructive in this case. In *HMO–W*, minority shareholders in a corporation had exercised their rights under Wis. Stat. ch. 180 to receive the "fair value" of their shares after the majority shareholders overruled the minority's objection to a merger with another company. Just before the merger, the corporation ordered an appraisal, which resulted in an estimate of the company's net value as between $16.5 million and $18 million. After the minority shareholders demanded payment for their shares, the corporation hired a new appraiser, who lowered the estimated value to $7.4 million. The minority shareholders argued that the corporation should be estopped from using the lower appraisal to calculate the fair value of the shares.

The supreme court concluded that a "court determining the fair value of shares subject to appraisal must consider all relevant factors," including "evidence of unfair dealing affecting the value of a dissenter's shares." *HMO–W*, 2000 WI 46, at ¶ 53, 234 Wis.2d 707, 611 N.W.2d 250 (citations and internal quotations omitted). However, the court upheld the trial court's decision to accept the second appraisal because the supreme court "perceive[d] no reason for the [trial] court to have relied solely on the value and methodology of the first appraiser or to have accepted a valuation it deemed inaccurate." *Id.* at ¶ 59, 234 Wis.2d 707, 611 N.W.2d 250.

The differences between *HMO–W* and this case are legion. *HMO–W* involved a particular statutory mechanism for dissenting shareholders to receive the fair value of their shares. The court did not purport to be setting forth general principles for courts to apply in any other case involving the distribution of assets. Even

if *HMO–W* were relevant in determining the right to an accounting when a limited liability company dissolves, plaintiff fails to explain how the case supports his position. The question in *HMO–W* came down to whether a court could reject an appraisal if it were shown that it was fraudulent. There is no suggestion in the case that members may use dissolution as an opportunity to challenge any decision made during the company's existence on the ground that the company would have been worth more if a different path had been taken. Rather, *HMO–W* is consistent with this court's conclusion that evidence of defendants' alleged misconduct would have been relevant if plaintiff had shown that it would be probative on the issue of Teel–Global's actual worth at the time of dissolution. Plaintiff did not make that showing. Instead, his evidence was directed at showing what Teel–Global *could have* been worth. If plaintiff's position were accepted, every dissolution would devolve into chaos, allowing any member to claim he was entitled to a larger share for each instance in which other members failed to follow his advice regarding the direction of the company. That cannot be the law.

Even if *HMO–W* allowed plaintiff to revisit past financial decisions, his argument would fail for two additional reasons. First, as I noted in the summary judgment order, plaintiff's proposed findings of fact consist primarily of conclusions with little or no specific factual support. His allegations of misconduct were no better. For example, he alleged that defendant Teel Plastics charged Teel–Global too much for rent, but his only support is a conclusory allegation that the "fair market rent" was lower than what defendant Teel Plastics charged. Plt.'s PFOF ¶ 37, dkt. # 124. In other instances, plaintiff argued that defendant Teel Plastics "should have" given Teel–Global more opportunities to grow, such as by giving Teel–Global a larger role

in a contract with Elk Corporation, but he fails to cite any authority showing that defendants' actions violated the law.

Second, even if plaintiff could show specific acts of misconduct, he fails to develop any argument explaining how those acts would be used in determining Teel–Global's worth at the time of dissolution or plaintiff's fair share of the assets, much less show any reason to believe that any adjustments made would be enough to prove that defendants owe plaintiff money. Instead, he simply lists everything he thinks defendants did wrong over the course of Teel–Global's existence. In fact, plaintiff's general strategy in this case seems to be one of blindly throwing everything he has against the wall with the hope that something will stick, but never articulating a coherent theory for his claims. Under *Anderson* and *Celotex*, that strategy will always be doomed to fail.

### 4. *Virchow Krause valuation*

Finally, plaintiff argues that the court erred in "accept[ing]" the Virchow Krause valuation for the purpose of summary judgment. Plt.'s Br., dkt. # 154, at 22. This argument is a nonstarter. Plaintiff disagreed with the conclusion of the valuation, but he did not argue that it was inadmissible, so he waived any evidentiary objection he had. In any event, even if I disregarded the valuation, doing so would not help plaintiff. Plaintiff does not disagree with the conclusion in the summary judgment order that "an accounting is an appropriate remedy when the plaintiff has shown that the defendant owes him money, but through no fault of his own, the plaintiff is unable to determine the amount." Dkt. # 140, at 14. Thus, even if defendants' evidence is excluded, this does not mean that plaintiff wins by default. "When there is no evidence concerning a critical fact ... the allocation of the burden of production of evidence becomes critical." *Metzl v. Leininger,* 57 F.3d 618,

622 (7th Cir.1995). Because it is *plaintiff's* burden to shown that he is owed money, the absence of evidence on this point would mean that his claim still fails.

### B. *Supplemental Briefing on § 9.3 of the Operating Agreement*

Section 9.3 of the operating agreement provides: "Upon dissolution, an accounting shall be made of the accounts of the Company and of the Company's assets, liabilities and operations, from the date of the last previous accounting until the date of dissolution." In the summary judgment order, I concluded that I could not resolve plaintiff's claim that defendants violated § 9.3 by failing to conduct an updated accounting because two issues remained unresolved: (1) whether either defendant could be sued under § 9.3; and (2) whether specific performance was appropriate without any showing by plaintiff that an updated accounting would lead to a different result. The parties have addressed these questions in their supplemental briefs. In addition, defendants argue that they *did* conduct an updated accounting so there can be no breach of contract.

The parties agree that the operating agreement does not resolve the first question directly because it does not assign to any particular person or entity the responsibility for conducting an accounting. Not surprisingly, they disagree about the proper inference to be drawn from this silence. Defendants argue that the operating agreement is explicit regarding the obligations of the individual members, so that it may be inferred that Teel–Global is the responsible party when no party is specified. Dfts.' Br., dkt. # 148 (citing *Goebel v. First Federal Savings & Loan Association,* 83 Wis.2d 668, 266 N.W.2d 352 (1978) ("[A] specific mention in a contract of one or more matters is considered to exclude other matters of the same nature or class not expressly mentioned.")). Defendants

find further support for their position in § 9.2 of the operating agreement and Wis. Stat. § 183.093(3) because both of these provisions state that the company continues its existence until the affairs of the company, including any accountings, are wound up.

As with many other issues in this case, plaintiff does not stick with one argument. Instead, he advances competing arguments that each defendant may be held liable for failing to conduct an updated accounting. First, plaintiff argues that defendant Teel Plastics is responsible because it "did not maintain separate accounts" for Teel–Global, because "dissolving [Teel–Global] was in part for [Teel Plastics's] benefit and because Teel Plastics made the decision to dissolve the company. Plt.'s Br., dkt. #143, at 3. Second, plaintiff argues that defendant Smith is responsible because § 9.3 requires him to "take all actions necessary to effect the dissolution and liquidation of the Company," which includes conducting an accounting. Plaintiff does not present these as arguments in the alternative or otherwise acknowledge that accepting his arguments as to one defendant would require rejecting his arguments as to the other defendant.

Although plausible arguments exist for holding that any one of Teel Plastics, Teel–Global or Smith is liable for conducting an accounting at dissolution, I think defendants have the better argument. Because any accounting would be conducted on behalf of Teel–Global and it is the assets of that company that are being distributed, it follows that Teel–Global is ultimately responsible for insuring that the accounting is performed as required, particularly because the operating agreement does not place the burden squarely on anyone else. Even if it may be inferred that the operating agreement contemplates that defendant Smith, as the manager, would perform all the actions necessary to wind up the company's business, including an accounting, Teel–Global may still be the party legally responsible if Smith is simply acting as an agent of that company. However, because neither side cites any authority directly supporting their position, I am hesitant to resolve the case on these grounds.

■ Assuming that Teel Plastics or Smith is the proper party on this claim, I agree with defendants that it would be pointless to order an updated accounting because the only evidence shows that Teel–Global continued to lose money in 2008. *McKinnon v. Benedict,* 38 Wis.2d 607, 617, 157 N.W.2d 665, 669 (1968) ("[E]quity will not enforce an agreement which would impose an unreasonable hardship on the defendant in order to enforce a bare legal or nonbeneficial right on the plaintiff."). According to Teel–Global's financial records, Teel–Global lost an additional $360,000 in 2008. Dfts.' Br., dkt. #141, at 9 (citing Thompson Aff., dkt. #142, exh. A). (Defendants argue that these records satisfied the requirement in § 9.3 to perform an updated accounting, but I need not decide that question.) Plaintiff does not dispute the validity of Teel–Global's records or point to any of his own evidence regarding the company's finances in 2008, with the exception of an allegation that defendant Teel Plastics "Charged [Teel Global] $20,539 for building improvements for a building [Teel Plastics] owned in July of 2008." Plt.'s Br., dkt. #143, at 7. Plaintiff does not provide the context for this charge or otherwise develop an argument that the charge was improper. It does not matter. Even if the charge is excluded, it does not change the bottom line, which is that plaintiff has failed to adduce any evidence that Teel–Global made a profit in 2008 or in any other year.

Plaintiff's frustration over Teel–Global's demise is understandable. When a business fails, those who lost their investment often look for someone else to blame, particularly when they believe that the company could have been saved by better management. It may be that defendants did not try as hard as they could have to make Teel–Global a successful company or to include plaintiff in important decisions. However, plaintiff cannot sustain a lawsuit on the basis of an unfortunate result and a list of vague complaints about the way the company was run over an eight-year period, particularly when he failed to take any legal action about his disagreements with defendants at any time during the company's existence.

It is telling that plaintiff was unable to comply with the court's directive to submit a proposed order on specific performance "because he does not think there is a basis yet to identify the specific provisions." Plt.'s Br., dkt. # 150, at 11 n. 5. After more than a year, plaintiff still is unable to identify with any specificity what laws defendants violated or even what relief he wants from the court. It is not the responsibility of the defendants or this court to determine the scope of plaintiff's claims or develop the facts in support of those claims. Plaintiff's failure to meet his burden of proof means that judgment must be entered in favor of defendants.

### ORDER

IT IS ORDERED that the motion for reconsideration filed by plaintiff Colin Christopher Felton, dkt. # 144, is DENIED. The clerk of court is directed to enter judgment in favor of defendants Teel Plastics, Inc. and Jay L. Smith and close this case.