COURT OF APPEALS
DECISION
DATED AND FILED

July 10, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2023AP537**

Cir. Ct. No.  **2021CV1291**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

AHMED H. ALURF,

   PLAINTIFF-APPELLANT,

 V.

COREY RICKEY JOHNSON, TRAGEDY HAPPENS, LLC,
SCOTT D. HOUDEK AND HOOKED UP TOWING, LLC,

   DEFENDANTS-RESPONDENTS.

---

APPEAL from a judgment of the circuit court for Racine County: DAVID W. PAULSON, Judge. *Affirmed.*

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Ahmed H. Alurf, pro se, appeals from that part of a circuit court judgment dismissing his claims alleging statutory theft, fraudulent conveyance, oppression of minority interest holder, and breach of fiduciary duty against Corey Rickey Johnson, Tragedy Happens, LLC, Scott D. Houdek, and Hooked-Up Towing, LLC. The court also granted Alurf's breach of contract claim against Johnson and awarded Alurf the resulting damages. Neither party appeals from that part of the judgment. We affirm.

## I. BACKGROUND

¶2 The parties do not dispute the facts relevant to this appeal. In May 2021, Alurf and Johnson entered into a purchase agreement whereby Alurf paid $70,000 in exchange for a twenty percent membership interest in the limited liability company (LLC) Tragedy Happens, which operated a towing business. As pertinent to this appeal, the purchase agreement contained the following clause:

> **Article 4 - RIGHTS:**
>
> The Membership Interest comes with voting rights in the LLC. **The agreement comes with a maturity date of 3 months after signing. Meaning after 3 month[s], if the buyer does not wish to continue this agreement the seller will return said funds for return of his shares. If after the 3 months[,] this [agreement] shall be finalized.**

About a month after he purchased a membership interest in Tragedy Happens, Alurf exercised his rights under Article IV. He sent the following letter, dated June 20, 2021, to Johnson and Tragedy Happens:

> This is a formal notification that the Membership Purchase Agreement signed on May 17th is no long in-effect [sic]. I am formally with drawing [sic] myself from Tragedy Happens, LLC and per our agreement I no longer have shares and will be able to collect my initial investment of $70,000 from the company. Please submit payment as soon as possible to avoid any further complications.

Sincerely,

Ahmed Alurf

While awaiting the return of his $70,000 investment, Alurf filed the Complaint underlying this appeal.

¶3    The Complaint alleged breach of contract, statutory theft, fraudulent conveyance, oppression of minority interest holder, and breach of fiduciary duty. Johnson and Tragedy Happens (of which Johnson owned 100 percent after Alurf relinquished his shares) were named as defendants in Alurf's action, as were Johnson's stepfather (Houdek) and Houdek's company, Hooked-Up Towing, LLC. Alurf alleged that Houdek and Johnson were using Tragedy Happens to funnel assets to Hooked-Up Towing at the expense of Tragedy Happens. Hooked-Up Towing was established on June 24, 2021, meaning that the alleged supply of assets to Hooked-Up Towing occurred after Alurf sent his letter of dissociation. Notwithstanding, Alurf alleged that he maintained membership in Tragedy Happens and could legally object to its use of assets even after he dissociated from the LLC.

¶4    The circuit court held a bench trial, after which the parties submitted briefs summarizing their positions. The court also heard post-trial oral arguments. After considering the evidence presented at trial, the parties' briefs, and post-trial oral arguments, the court made the following findings: Article IV of the purchase agreement permitted Alurf to resign on or before three months and at some point get a refund; Alurf's June 2021 resignation letter was a formal timely withdrawal from Tragedy Happens; and Johnson breached the purchase agreement by failing to return the $70,000 as required under Article IV. The court awarded Alurf $70,000 plus interest and costs for Johnson's breach of the purchase agreement.

¶5 The circuit court also rejected Alurf's theory regarding "flow-through to assets of Hooked-Up Towing." It observed that it "doesn't see how Hooked-Up Towing and Scott Houdek are even involved in this case." Although it held that Alurf "is entitled to his $70,000," the court explained that it could not "see how that money is restricted in its use or how the use of that money creates some type of security against subsequent assets purchased." The court therefore dismissed Alurf's remaining claims against Tragedy Happens, Houdek, and Hooked-Up Towing with prejudice and awarded costs to those parties. Alurf appeals.

¶6 On appeal, Alurf argues that despite his June 2021 letter terminating the purchase agreement and explicitly stating he would "no longer have shares" in Tragedy Happens, this court should conclude that he was not dissociated from the LLC under the statutes until his investment funds are returned to him. Johnson[1] argues "that dissociation terminates membership and thus does not afford the former (dissociated) member the same rights, duties, and obligations as the remaining members."

## II. DISCUSSION

¶7 This case requires us to interpret the LLC's purchase agreement and the related statutes set forth in WIS. STAT. ch. 183 (2019-20).[2] An LLC's purchase agreement is a contract. *See*, *e.g.*, ***Gottsacker v. Monnier***, 2005 WI 69, ¶22, 281

---

[1] For the remainder of this opinion, we refer collectively to all defendants named in the Complaint as "Johnson."

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

Wis. 2d 361, 697 N.W.2d 436. "Contract interpretation presents a question of law that we review independently of previous decisions of the circuit court ... but benefitting from [its] discussions." ***Estate of Kriefall v. Sizzler USA Franchise, Inc.***, 2012 WI 70, ¶14, 342 Wis. 2d 29, 816 N.W.2d 853. "Statutory interpretation and the application of a statute to a given set of facts are questions of law that we review independently, but benefiting from" the analysis of the circuit court. ***Marder v. Board of Regents of Univ. of Wis. Sys.***, 2005 WI 159, ¶19, 286 Wis. 2d 252, 706 N.W.2d 110.

¶8      In June 2021, the statute governing the effect of dissociation was WIS. STAT. § 183.0802.[3]  That statute reads, in relevant part, as follows:

> **(1)** A person ceases to be a member of a limited liability company upon the occurrence of, and at the time of, any of the following events:
>
>    (a) The member withdraws by voluntary act from the limited liability company under sub. (3).
>
>    ….
>
>    **(3)** (a) … a member may voluntarily withdraw from a limited liability company at any time by giving written notice to the other members, or on any other terms as are provided in an operating agreement….

Sec. 183.0802.  Interpretation of § 183.0802 also requires a review of related definitions.  Of note, the statutes define "[m]ember" as "a person who has been admitted to membership in a limited liability company … and who has not dissociated from the limited liability company."  WIS. STAT. § 183.0102(15).  A

---

[3] Although Alurf cites to WIS. STAT. § 183.0603 (2021-22) ("Effect of dissociation") in support of his argument, that law was not in effect until January 1, 2023.  Due to the timing of the purchase agreement and Alurf's letter, we therefore rely on the statutes in WIS. STAT. ch. 183 (2019–20) in conducting our analysis.

"member's interest" as used in the relevant statutes "means a member's rights in the limited liability company, including the member's share of the profits and losses of the limited liability company, the member's right to receive distributions of limited liability company assets, and the member's right to vote or participate in management of the limited liability company." Sec. 183.0102(11).

¶9     A plain reading of the applicable statutes leads us to conclude that Alurf voluntarily dissociated from Tragedy Happens and, thus, ceased to be a member in the LLC. The statutory language is clear in that one is only a "[m]ember" of an LLC if he or she "has not dissociated from the [LLC]." WIS. STAT. § 183.0102(15). The statutes further indicate that one dissociates when he or she "withdraws by voluntary act." WIS. STAT. § 183.0802(1)(a). Thus, unless the purchase agreement contained other provisions governing dissociation, the statutes govern the analysis. *See Lenticular Europe, LLC v. Cunnally*, 2005 WI App 33, ¶18, 279 Wis. 2d 385, 693 N.W.2d 302 (explaining that "if an operating agreement is ambiguous as to whether the members intended to override a particular statutory default term, the statutory default term governs."). Accordingly, we turn our attention to the purchase agreement to determine whether, by its terms, Alurf remained a member in the LLC until he received his investment back, even after giving written notice of dissociation.

¶10     The only provision of the purchase agreement at issue here is Article IV, cited in full above. Article IV, when read in conjunction with WIS. STAT. ch. 183, is unambiguous as to the parties' rights and responsibilities related to dissociation. Neither Alurf nor Johnson argues otherwise. Article IV clearly provides that within three months of the date of the purchase agreement, Alurf had a contractual right to dissociate from Tragedy Happens. There is no dispute that he did so within the three-month period. Article IV also clearly provides that

timely notice entitles Alurf to a full refund of his investment. There is no dispute that he is entitled to a return of his investment. However, because the agreement is silent as to what form a notice of dissociation must take, the applicable statutes control. *See Lenticular Europe*, 279 Wis. 2d 385, ¶18. WISCONSIN STAT. § 183.0802(3)(a) provides that, unless specified in the agreement, the notice must be in writing. There is no dispute that Alurf properly notified Johnson in writing, or that Johnson breached the contract by failing to return Alurf's investment.

¶11 Although there is no dispute that the circuit court's order requiring Johnson to return Alurf's investment was supported by the agreement, Alurf argues that this remedy is insufficient. Alurf maintains that according to Wisconsin law, despite having given formal written notice of dissociation, he will not be dissociated from Tragedy Happens until his investment is returned to him. Thus, he asserts he is entitled to exercise the rights of a member, and, as such, the circuit court erred in dismissing his remaining claims. We disagree.

¶12 Based on our review of the purchase agreement and the governing statutes, we conclude that upon giving written notice of dissociation, the agreement ends, the shares are returned to the LLC, and the dissociator is no longer a member of the LLC. Accordingly, the former member no longer has any membership rights "in the limited liability company, including the member's share of the profits and losses of the limited liability company, the member's right to receive distributions of limited liability company assets, and the member's right to vote or participate in management of the limited liability company." *See* WIS. STAT. § 183.0102(11). Thus, upon tendering his written notice, Alurf was no longer a member of Tragedy Happens, and he was no longer able to take legal action to enforce rights that only apply to members.

¶13    By providing written notice of dissociation, Alurf lost his right to object to how Tragedy Happens used its assets, regardless of whether it intermingled funds with Hooked-Up Towing or with any other party or company. To this point, the Record is clear that the relationship between Tragedy Happens and Hooked-Up Towing began only after Alurf dissociated—Hooked-Up Towing was not an established LLC when Alurf gave his notice. As a dissociated member, Alurf was no longer in a position to object to Tragedy Happens' post-dissociation business dealings. Thus, the circuit court did not err in dismissing all claims except for the breach of contract against Johnson.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.